Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM**
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

*Counsel for Plaintiff and Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA JOYCE, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| GUTHY-RENKER LLC, | (DEMAND FOR JURY TRIAL) |
| Defendant. | |

Plaintiff Victoria Joyce brings this action on behalf of herself and all others similarly situated against Defendant Guthy-Renker LLC. Plaintiff makes the following allegations pursuant to the investigation of her counsel and upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## INTRODUCTION

1. This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme.

2. Defendant sells a wide range of cosmetics aimed at treating skin conditions through various online channels, including on its website, www.subd.com (the "Website"), and in advertisements on social-media sites, including Instagram. Whenever a consumer purchases Defendant's products – whether it be on the Website or through a social-media advertisement – Defendant surreptitiously enrolls the consumer in an automatically renewing "subscription" that, unbeknownst to the consumer at the time, results in a recurring charges to the consumer's credit card, debit card, or third-party payment account ("Payment Method") every month, in perpetuity until canceled (the "Cold Plasma Subscriptions").

3. Prior to enrolling Plaintiff and its other customers into Cold Plasma Subscriptions – and thereafter assessing each of their Payment Methods a recurring charge on a monthly basis – Defendant failed to provide the disclosures and authorizations required by California's Automatic Renewal Law ("ARL"), Cal. Bus. Prof. Code §§ 17600, *et seq.*, to any of these consumers.

4. Pursuant to the ARL, online retailers that offer automatically renewing subscriptions to California consumers must: (i) provide the complete automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to completion of the enrollment process, *see* Cal. Bus. Prof. Code § 17602(a)(1); (ii) obtain consumers' affirmative consent prior to charging their Payment Methods in connection with the subscriptions, *see id.* § 17602(a)(2); and (iii) provide an acknowledgment that includes the automatic renewal offer terms and identifies a cost-effective, timely, and easy-to-use mechanism for consumers to cancel their subscriptions, *see id.* §§ 17602(a)(3), 17602(c).

5.      As discussed in greater detail below, the electronic "checkout flows" on Defendant's Website and social-media advertisements, which Plaintiff and numerous other California consumers used to purchase Defendant's products, uniformly violated each of these core requirements of the ARL. And when consumers eventually do realize that Defendant has enrolled them in Cold Plasma Subscriptions without their authorization – such as when consumers notice Defendant's recurring charges on their credit card billing statements – Defendant then makes it exceedingly difficult and unnecessarily confusing for consumers to cancel the Cold Plasma Subscriptions.

6.      Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Section 17602(a)(3). *See* Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3); *see also id.* § 17601(b)(1)-(5) (setting forth the definition of "automatic renewal offer terms" as used in Cal. Bus. Prof. Code § 17602(a)).  The standardized post-order acknowledgment email sends to its customers also fails to disclose a toll-free telephone number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation – making it exceedingly difficult and unnecessarily confusing for consumers to cancel Cold Plasma Subscriptions – in clear violation of Section 17602(c) of the ARL.

7.      As a result of Defendant's violations of Section 17602 of the ARL, the Cold Plasma Subscriptions are deemed "unconditional gifts" pursuant to Section 17603 of the ARL, entitling Plaintiff and the Class to restitution.  *See* Cal. Bus. & Prof. Code § 17603.

8.      Defendant's deceptive conduct in selling the Cold Plasma Subscriptions does not stop there. In addition to violating the ARL, Defendant has engaged in a widespread deceptive pricing scheme to induce consumers to purchase its "promotional" Cold Plasma Subscriptions by falsely advertising a massive "76% Off" discount from a purported regular price that Defendant

never charges, Defendant also represents that these offers are limited-time sales and uses countdown timers, even though the same sale is always available. This deceptive discount pricing scheme misleads reasonable consumers into believing they are receiving an extraordinary limited-time deal, and it violates California's prohibitions on false advertising and misleading pricing.

9.     For the foregoing reasons, Plaintiffs bring this action individually and on behalf of all subscribers of any of Defendant's Cold Plasma Subscriptions who, within the applicable statute of limitations period up to and including the date of judgment in this action, were induced by Defendant's false sales or incurred unauthorized fees for the renewal of their Cold Plasma Subscriptions.  Based on Defendant's unlawful conduct, Plaintiffs seek damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (1) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) negligent misrepresentation; (5) intentional misrepresentation; (7) unjust enrichment/restitution; (8) breach of contract; and (9) breach of express warranty.

## THE PARTIES

10.     Plaintiff Victoria Joyce is, and at all times relevant hereto was, a citizen and resident of Livermore, California.  On or about June 10, 2025, Plaintiff made a purchase of a "Neck & Face Firming Kit with Cold Plasma Sub-D+" from Defendant's Website via Instagram at a discounted rate of $88.15 after seeing Defendant's "76% Off" discount.  When Plaintiff made her purchase, Defendant enrolled Plaintiff in – unbeknownst to her at the time – a Cold Plasma Subscription. Consequently, following her purchase, Defendant assessed Plaintiff's Payment Method a recurring charge of $115.71 on July 16, 2025. Promptly after noticing the charge, Plaintiff canceled her Cold Plasma Subscription on July 22, 2025. Notwithstanding Plaintiff's cancellation, Defendant charged Plaintiff's Payment Method in the amount of $112.55 on both August 16, 2025, and September 16, 2025. Plaintiff subsequently disputed those charges with her credit card provider but was unable to obtain a full refund from Defendant.  Had Plaintiff known that Defendant would enroll her in an

automatically renewing Cold Plasma Subscription, she would not have made a purchase from Defendant at all.

11.     Furthermore, at the time she made her purchase, Plaintiff saw and relied on Defendant's "76% OFF" discounts depicted below. Had Plaintiff been aware that the limited-time sale was not genuine, she would not have purchased the Cold Plasma Subscription at all or on the same terms.  Plaintiff also paid a premium for the Cold Plasma Subscription due to Defendant's false discount representations, time-pressure tactics, and misleading enrollment representations.

12.     The facts giving rise to Plaintiff's claims are materially the same as those of other members of the Classes he seeks to represent

13.     Defendant Guthy-Renker LLC is a Delaware corporation that maintains its corporate headquarters and principal place of business in El Segundo, California. Defendant is an online-based retailer of nutritional supplements aimed at preventing hair loss, which it sells to consumers on its Website and through social-media advertisements to consumers nationwide, including throughout California.

14.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this is a putative class action where the aggregate amount sought by members of the proposed class exceeds $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different from Defendant.

16.     Personal jurisdiction and venue are proper because Plaintiff resides in Livermore, California, within this judicial District; because Plaintiff made her purchase of Defendant's products while she was physically present in Livermore, California; because Defendant shipped such goods to Plaintiff's residence in Livermore, California; and because Plaintiff was located in Livermore,

California when Defendant enrolled her in, and thereafter charged her Payment Method on a monthly basis pursuant to the Cold Plasma Subscription. Additionally, Defendant has, at all times relevant hereto, systematically and continually conducted, and continues to conduct, business in California, including within this judicial District, including through the promotion, marketing, and sale of its products.

## FACTUAL BACKGROUND

### A. Background On the Subscription-Based e-Commerce Industry

17. The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[1] Subscription e-commerce services now target a wide range of customers and cater to a variety of specific interests. Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years. Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have demonstrated a growing preference for access to subscription services[.]"[2] Analysts at UBS predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $650 billion in 2020.5[3] That constitutes an average annual

---

[1] Core DNA, *How to Run an eCommerce Subscription Service: The Ultimate Guide* (May 19, 2020), https://www.coredna.com/blogs/ecommerce-subscription-services.

[2] Business Insider, *Taco Bell's taco subscription is rolling out nationwide — here's how to get it* (Jan. 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).

[3] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%.").

*See also* Subscribed, *UBS Declares: It's Worth Investing in the Subscription Economy* (Apr. 17, 2021), https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-the-subscription-economy; Business 2 Community, *The Subscription Economy Is Booming Right Now. But Are You Reaping the Full Benefits?* (Oct. 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right-now-but-are-you-reaping-the-full-benefits-02434851.

growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries globally."[4]

18.     The production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years.  According to *Forbes*, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[5]  Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[6]  "As such, the financials of companies with subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[7]  Thus, "[t]he share prices of most subscription companies have performed well in recent years."[8]

19.     The expansion of the subscription e-commerce market shows no signs of slowing. "We're now in the subscriptions era, and the pandemic is accelerating its takeover.  During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[9]  According to *The Washington Post*, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the

---

[4] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra* ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); *see also* Juniper Research, *Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025; Growing To Over $263bn Globally* (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake (acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

[5] Forbes, *The State Of The Subscription Economy, 2018* (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[6] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra*.

[7] *Id.*

[8] *Id.*

[9] *Id.*

pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[10]

20.     However, as *The Washington Post* has noted, there are downsides associated with the subscription-based business model.[11]  While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[12]  In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[13]  Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[14]  As these companies have realized, "[t]he real money is in the inertia."[15]  As a result, "[m]any e-commerce sites work with third-party vendors to implement more manipulative designs."[16]  That is, to facilitate consumer inertia, a number of subscription e-commerce companies,

[10] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

[11] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[12] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[13] *Id.*

[14] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[15] *Id.*

[16] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (Jun. 25, 2019), https://www.businessinsider.com/dark-patterns-online-shopping-princeton-2019-6.

including Defendant, "are now taking advantage of subscriptions in order to trick users into signing up for expensive and recurring plans. They do this by intentionally confusing users with the design and flow of their website and apps, *e.g.*, by making promises of 'free trials' that convert after only a matter of days, and other misleading tactics," such as failure to fully disclose the terms of its automatic renewal programs.[17]

21. To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[18] Moreover, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[19] For instance, numerous companies, including Defendant, have resorted to using "dark patterns" on their e-commerce platforms. A dark pattern is "a user interface carefully crafted to trick users into doing things they might not otherwise do, such as … signing up for recurring bills."[20] Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts[ and] attempting to respond to a proliferation of abuses by some companies over the past few years[,]"[21] widespread utilization of misleading dark patterns and deliberate omissions persist.

---

[17] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[18] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), *supra* ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); *see also* New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

[19] *Id.*

[20] UX Design, *Dark patterns in UX: how designers should be responsible for their actions* (Apr. 15, 2018), https://uxdesign.cc/dark-patterns-in-ux-design-7009a83b233c (quoting UX designer Harry Brignull (PhD Cognitive Science), who coined the term "Dark Patters" in August 2010).

[21] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), *supra.*

22.     Defendant successfully capitalized on this demand. In fact, Defendant's growth in revenue and subscriber count with respect to its Subscriptions coincides with a sharp decline in subscriber satisfaction as the Subscriptions and the platforms from which they operate have become riddled with "dark patterns." Specifically, Defendant has used various types of dark patterns, including but not limited to "Roach Motel,"[22] "Misdirection,"[23] and "Forced Continuity,"[24] in order to prevent users from canceling their Subscriptions by way of adopting complex cancellation procedures to increase the friction in the subscription cancellation process. Defendant's utilization of these dark patterns – especially in conjunction with its failure to fully disclose the terms of its automatic-renewal programs (discussed further below) – has led to a reduction in churn rates by making it next to impossible for subscribers to cancel their Subscriptions. It has further led to an increase in accidental or unintentional sign-ups by consumers for paid Subscriptions, in effect increasing subscriber count and, thus, Defendant's overall revenues from renewal fees.[25]

23.     As discussed below, Defendant has employed a host of dark patterns in its Website and social-media advertisements to lure and deceive millions of consumers into becoming and

---

[22] "Roach Motel" refers to a "design [that] makes it very easy for [consumers] to get into a certain situation, but then makes it hard for [consumers] to get out of it (e.g. a subscription)." https://www.darkpatterns.org/types-of-dark-pattern/roach-motel.

[23] "Misdirection" is a type of dark pattern where a website's "design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another." In many cases, "[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening[.]" https://www.darkpatterns.org/types-of-dark-pattern/misdirection.

[24] One example of "Forced Continuity," another type of dark pattern, is where customers' sign up for a "free trial with a service[ that] comes to an end and [their] credit card silently starts getting charged without any warning. [The subscriber is] are then not given an easy way to cancel the automatic renewal." https://www.darkpatterns.org/types-of-dark-pattern/forced-continuity.

[25] *See* Gizmodo, *Pervasive 'Dark Patterns' Are Fooling People Into Signing Up for Services They Don't Want* (Sep. 15, 2022), https://gizmodo.com/dark-patterns-ui-cancel-subscription-1849542166 ("As much as you think you have full control of you and your wallet, it's getting increasingly difficult for anybody using an app or a website to avoid getting suckered into surrendering your money or personal information to misleading or tricky UI design. … Tech companies and online retailers [] lure users into signing up for subscription services while obscuring costs or charges, then making it difficult to actually cancel. Some dark patterns include confusing users in dense terms of service to obscure key limitations of products or junk fees attached to their use.")

remaining enrolled in Cold Plasma Subscriptions. That is the precise conduct that California's legislature sought to prevent in enacting California's Automatic Renewal Law.

**B.    California's Automatic Renewal Law**

24.    In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600 (statement of legislative intent).

25.    The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

> (2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

> (3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

26.    The ARL also requires that, prior to the completion of the initial order for the automatic renewal or continuous service, sellers must explain the price to be charged when the

promotion or free trial ends.  *See* Cal. Bus. & Prof. Code § 17602(a)(1), *supra*.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  *See id*.  Sellers must also notify consumers in the acknowledgment about how to cancel the free trial before they are charged.  *See* Cal. Bus. & Prof. Code § 17602(a)(3), *supra*.

27.    Section 17602(c) of the ARL further provides:

> A business that makes an automatic renewal offer or continuous service offer **shall provide a toll-free telephone number, electronic mail address,** a postal address if the seller directly bills the consumer, **or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation** that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(c). (emphasis added).

28.    Additionally, the ARL also requires e-commerce sellers, doing business in California, to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online.  Specifically, Section 17602(d) provides:

> [A] business that allows a consumer to accept an automatic renewal or continuous service offer online shall allow a consumer to terminate the automatic renewal or continuous service *exclusively online*, *at will*, *and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately*.

Cal. Bus. & Prof. Code § 17602(d)(1) (emphasis added).

29.    The ARL further specifies that a seller who provides an automatic offer "shall provide a method of termination that is online in the form of either of the following: (A) A prominently located direct link or button which may be located within either a customer account or profile, or within either device or user settings[; or] (B) By an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information." Cal. Bus. & Prof. Code § 17602(d)(1)(A)-(B).

30.    Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." Cal. Bus. & Prof. Code § 17601(a).

31.     Section 17601 of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 1760, *et seq.*

32.     The ARL defines "clear and conspicuous" or "clearly and conspicuously" meaning "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code § 17601.

33.     Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business[.]"  Cal. Bus. & Prof. Code § 17603.

34.     As alleged below, Defendant's practices on the Website and its social-media advertisements systematically violate Sections 17602(a)(l), 17602(a)(2), 17602(a)(3), 17602(c), and 17602(d) of the ARL.

**C.     Defendant's Business: The Subscription Enrollment Process**

35.     At all relevant times, Defendant offered, via the Website and through social-media advertisements (including on Instagram), nutritional supplements aimed at preventing hair loss to consumers.

36.    When a consumer purchases a product from Defendant on its website or through one of its social-media advertisements, Defendant surreptitiously enrolls the consumer in a Cold Plasma Subscription that, unbeknownst to the consumer at the time, results in the consumer's Payment Method being assessed a recurring charge each and every month, in perpetuity (or until canceled by the consumer).

37.    Defendant's Cold Plasma Subscriptions constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

38.    Regardless of whether a consumer purchases a product from Defendant on its website or through one of its social-media advertisements, the process of making the purchase – and becoming unknowingly enrolled in a Cold Plasma Subscription – is substantially the same. Upon navigating the final screen of the checkout process (the "Checkout Page"), consumers are prompted to input their name, address, other contact information, and the details of their chosen Payment Method, and to finally click a giant payment buttons that obscure the other information on the webpage.

39.    Defendant's Checkout Page fails to comply with the ARL in numerous respects.

40.    Prior to enrolling Plaintiff and other Californians in Cold Plasma Subscriptions, the ARL required Defendant to "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1) (emphasis added). Under the ARL, a "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code §17601(3).

41.    On the Checkout Page, Defendant failed to present to Plaintiff or any member of the Class the terms of the Cold Plasma Subscription in "larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *See id.* Instead, the only statement provided on the Checkout Page concerning Cold

Plasma Subscriptions appeared in miniscule, inconspicuous font (much smaller than the surrounding text on the Checkout Page), all the way *above* or *below* the payment buttons that consumers must click to place an order. In fact, the disclosure is completely missing when a consumer opens the drop down menu to review their order or scrolls down to enter their payment information. The screenshots below show the Checkout Page as it appears when a visitor first arrives, as well as after they open the dropdown menu or scroll down to the credit card payment button:



42.     Moreover, because a consumer navigating through the Checkout Page would have no need to review Defendant's purported ARL disclosure, there is no reason to believe that any consumer who placed an order on the Checkout Page ever saw the recurring charges statement before placing an order. And even if they did, the disclosure does not unambiguously state that by clicking on any button consumers were agreeing to those terms.

43.     Simply put: the statement concerning the Cold Plasma Subscription that appeared below or at the very top of the payment buttons was the exact opposite of the "clear and conspicuous" disclosure that the ARL demands. *See* Cal. Bus. & Prof. Code § 17601(a)(1).

44. And because this statement was neither "clear [nor] conspicuous," Defendant failed to "first obtain[][any] consumer's affirmative consent to [any] agreement" with respect to the Cold Plasma Subscription, let alone any such agreement "containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time." Cal. Bus. & Prof. Code § 17602(a)(2). Indeed, even the purported ARL statement does not provide the exact amount of the recurring charges, the billing frequency, or a full description of the cancellation policy pertaining to the Cold Plasma Subscription. For instance, the ARL statement appears to suggest that the Cold Plasma Subscription is a monthly recurring plan, without clearly stating that it's actually a 3-month subscription (at an undisclosed price) charged monthly. The language was, and did, mislead consumers about the true nature of the recurring charges. Similarly, the deadline to cancel the recurring charges and other aspects of the cancellation policy are completely missing.

45. Additionally, after enrolling a consumer in a Cold Plasma Subscription, the ARL required Defendant to "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(a)(3).

46. After Plaintiff and members of the Class placed orders on the Checkout Page, Defendant sent them each the same pro forma e-mail regarding their purchase (the "Acknowledgment Email").

47. The post-order Acknowledgment Emails that Defendant systematically sent to its customers (including to Plaintiff and all proposed Class members) uniformly failed to include "the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer," as required by Cal. Bus. & Prof. Code § 17602(a)(3). Specifically, Defendant's Acknowledgment Emails failed to adequately disclose: that the Cold Plasma Subscription "will continue until the consumer cancels[,]" Cal. Bus. & Prof. Code § 17601(b)(1); a statement of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, [and] if that is the case, and the amount

to which the charge will change, Cal. Bus. & Prof. Code § 17601(b)(3); or "[t]he length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer[,]" Cal. Bus. & Prof. Code § 17601(b)(4). As with the Checkout Page, disclosures of these required automatic renewal terms are either missing altogether, are deceptively incomplete, objectively inaccurate, and/or are inconspicuously buried in the tiny fine print at the bottom of the Acknowledgement Email. Further, the Acknowledgment Emails fail to provide a toll-free telephone number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation of the Cold Plasma Subscriptions, and, in fact, Defendant makes it exceedingly difficult and unnecessarily confusing for consumers to cancel Cold Plasma Subscriptions. Accordingly, each of the Acknowledgment Emails that Defendant sent to Plaintiff and Class members violated sections 17602(a)(3), 17602(b), and 17602(c) of the ARL.

48. During the time period relevant to this action, the form and content of the Acknowledgment Email sent by Defendant to each member of the putative Class were the same, in all material respects, as the Acknowledgment Email that Defendant sent to Plaintiff.

49. In sum, during the relevant time period, Defendant's deficient pre- and post-purchase disclosures to Plaintiff and Class members concerning the Cold Plasma Subscriptions were totally non-compliant with the ARL.

50. Because Defendant charged Plaintiff's and its other customers' Payment Methods in violation of the ARL, all goods, wares, merchandise, and/or products sent to Plaintiff and Class members upon the automatic renewal of their continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

51. As a direct result of Defendant's unlawful conduct described above, Plaintiff and putative Class members have incurred substantial financial injury in the form of all monies withdrawn from their Payment Methods in connection with the Cold Plasma Subscriptions in which they were surreptitiously enrolled by Defendant.

### D. California's and FTC's Ban on Fake Discounts

52. Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they believe that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else. California law provides clear guidelines as to permissible and unlawful sales tactics:

53. While there is nothing wrong with a legitimate sale, a fake one—that is, one with misleading regular prices and deceptive discounts—is illegal.

54. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale when it actually is not.

55. Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, California's False Advertising Law also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

56. In addition, California's Consumers Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

57. The Federal Trade Commission's regulations also prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

58.     As numerous courts have found, fake sales violate these laws. They also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

### E. Defendant's fake sales and hidden insurance fee are unlawful and misleading.

59.     Defendant has long employed a deceptive "fake sale" pricing scheme to lure customers into purchasing its products. The scheme centers on advertising Cold Plasma Subscription as being on sale at a steep discount – specifically, "76 Off" – all the time, thereby creating a false impression of a limited-time bargain.

60.     On its Website and promotional materials, Defendant prominently displays its false discount. For example, from at least 3 months prior to Plaintiff's purchase and through the filing of this Complaint, Defendant advertised a "Fall Sale" of "76% Off" using strike-through prices.





61.     Reasonable consumers understand such representations to mean $245.50 is Defendant's regular, non-sale price for two products, and that they are being given a time-limited opportunity to buy them at a 76% discount from the regular price. A representation of "76% Off" discount plainly conveys that the consumer is getting a tremendous deal compared to what the product or service normally costs.

62.     In reality, however, Defendant *never* charges $245.50 for the Cold Plasma Subscription. That price is fiction. Instead, it is an inflated reference point that Defendant uses to make its perpetual sale look legitimate. Thus, the $245.50 is a false former price that overstates the Cold Plasma Subscription's true value and misleads consumers about the purported savings.

63.     In addition to its false and misleading $245.50 reference price, the "76% Off" sale is effectively never-ending. Each of these promotions implies that the discount is tied to a specific time frame or event and that after the event, the price may go back up. Defendant reinforces this impression by including timers directly adjacent to those promotions, urging consumers to act fast before the deal expires. However, as soon as one sale period ends, another begins. Investigations using the Internet Archive's Wayback Machine[26] confirms that Defendant's limited-time sale messaging has been present virtually continuously over the last year, simply rebranded for different seasons or promotions.

64.     To confirm that Defendant always offers the purported 76% Off limited discount, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine. That investigation confirms Defendant's perpetual sales in the same layout and design as the sampler pictures above.

65.     Defendant's fake discount pricing scheme violates California's laws and FTC regulations. Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Cold Plasma Subscription, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the Website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the Website would reasonably believe

---

[26] https://web.archive.org/web/20230415000000*/https://www.ultimate-guitar.com/ (last accessed October 28, 2025).

that there happened to be another sale—especially when Defendant changes the names of its sales despite offering the same or a similar discount. Discovering Defendant's deception required extensive mining of internet archives.

66. Defendant's misrepresentations regarding the price and discount of the Cold Plasma Subscription were material to consumers' decisions. A reasonable consumer attaches importance to whether an "76% Off" deal is genuine – such a deep discount implies huge savings and often triggers an urgent desire to buy now rather than later (to avoid missing out). As studies have found, "[n]early two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[27] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[28] Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[29]

67. Had consumers known that the "76% Off" discount was always available, and that the $245.50 reference price was false, they would not have been influenced by the urgency or perceived value of the offer. As a result, Plaintiff and the Class members made a purchase they might have postponed or foregone and otherwise paid a premium for the Cold Plasma Subscription due to Defendant's deceptive conduct.

68. As set forth in further detail below, Plaintiff's claims, which are based on Defendant's failure to comply with the ARL and its use of false discounts and surprise fees constitute "unlawful" conduct under the UCL. Further, because the Cold Plasma Subscriptions were, by operation of law,

---

[27] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying behavior/.

[28] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (https://www.prnewswire.com/news releases/retailmenot-surveydeals- and-promotional-offers-drive-incremental-purchases-online especially-among-millennial-buyers-300635775.html).

[29] 7https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

"unconditional gifts" to Plaintiff and putative Class members (*see* Cal. Bus. & Prof. Code § 17603) – and thus Plaintiff and Class members already owned the goods, tools, and benefits of the subscriptions as their personal property at the time Defendant withdrew monies from their Payment Methods as consideration for access to the same, without any legal or contractual authority to do so – Plaintiff's claims are also based on Defendant's practice of charging consumers in exchange for unconditional gifts and arise under the "fraudulent" and "unfair" prongs of the UCL. Additionally, Plaintiff brings this action against Defendant for violations of the CLRA and FAL, and conversion, unjust enrichment, negligent misrepresentation, and fraud.

### No Adequate Remedy at Law

69.     For their equitable relief claims, Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Classes are inadequate because they are not equally prompt, certain, and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the FAL and UCL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

70.     Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Cold Plasma Subscription are determined to be an amount less than the total expenditure in connection with that subscription. Without compensation for the full price of the Cold Plasma Subscription, Plaintiff would be left without the parity in purchasing power to which they are entitled.

### CLASS ACTION ALLEGATIONS

71. ***Class Definition***. Plaintiff brings this action on behalf of a class of similarly situated individuals, defined as follows (collectively, the "Classes"):

(a) ***ARL Class:*** All persons in the United States who, within the applicable limitation period, up to and including the date of final judgment in this action, were charged a renewal fee for a Cold Plasma Subscription by Defendant.

(b) ***False Sales Class:*** All persons in the United States who, within the applicable limitation period, up to and including the date of final judgment in this action, purchased the Cold Plasma Subscriptions at a purported discount.

72. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

73. Specifically excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

74. Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

75. ***Numerosity.*** The Classes are so numerous that their individual joinder herein is impracticable. On information and belief, the Classes comprise at least millions of consumers. The precise number of the members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. The members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

76. ***Commonality and Predominance.*** Common questions of law and fact exist as to all the members of the Classes and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to: (a) whether Defendant's Cold Plasma Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer,

in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's and the ARL Class members' Payment Method for an automatic renewal or continuous service without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of Cal. Bus. & Prof. Code § 17602(a)(2); (d) whether Defendant failed to provide an acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and the ARL Class members, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's Cold Plasma Subscriptions were sold at the reference price within 90 days of Plaintiff's and the False Sales Class members' purchases; (g) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (h) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (i) whether Plaintiff and the Classes are entitled to damages and/or restitution; (j) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (k) whether Plaintiff and the Classes are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

77. ***Typicality.*** The claims of Plaintiff are typical of the claims of the ARL Class in that Plaintiff and the ARL Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiff's and the ARL Class members affirmative consent to the automatic renewal offer terms or continuous service offer terms associated with the Cold Plasma Subscriptions before charging their Payment Methods. Similarly, the claims of Plaintiff are typical of the claims of the members of the False Sales Class because, like other members of the False Sales Class, she purchased the Cold Plasma Subscription relying on the representations and omissions made by Defendant that the Cold Plasma Subscription was being sold at a discount from its false reference pricing.

78.    **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has no interests antagonistic to the Classes' interests, and Plaintiff has retained counsel that has considerable experience and success in prosecuting complex class actions and consumer-protection cases.

79.    **Superiority**.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

80.    Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

81.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and the Classes and will likely retain the benefits of its wrongdoing.

82.    Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

**COUNT I**
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(On behalf of Plaintiff and the ARL Class)**

83.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

84.    Plaintiff brings this claim individually and on behalf of the members of the ARL Class against Defendant.

85.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional

or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

86. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and the members of the ARL Class.

87. As alleged more fully above, Defendant violated, and continues to violate, section 17500 of the FAL through its misrepresentations and omissions made to consumers before and after enrollment into its Cold Plasma Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments. For instance, Defendant is silent regarding the material terms of its Cold Plasma Subscriptions policies, including Defendant's unilateral rights to change the subscriptions' fees and billing practices, how and when to cancel them, and the consequences of doing so. These misrepresentations and omissions on the Checkout Page and the Acknowledgment Email constitute false and deceptive advertisements.

88. Defendant's actions in violation of the FAL, as described herein, were false and misleading, such that the general public is and was likely to be deceived.

89. Plaintiff and the members of the ARL Class did not learn of Defendant's automatic payment policies until after they had already signed up and started paying for Defendant's Cold Plasma Subscriptions.

90. As such, Plaintiff and the members of the ARL Class saw, read, and reasonably relied on Defendant's statements and omissions to their detriment.

91. In addition, class-wide reliance can be inferred because Defendant's representations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to enroll in the Cold Plasma Subscriptions and deciding when to cancel them.

92. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the ARL Class.

93. Plaintiff and the members of the ARL Class suffered economic injury as a direct result of Defendant's conduct because they were induced to purchase Cold Plasma Subscriptions and/or pay renewal fees they would not have otherwise paid. Had Defendant fully and clearly

disclosed the terms associated with the Cold Plasma Subscriptions, Plaintiff and the members of the ARL Class would not have subscribed to the Cold Plasma Subscriptions, or they would have canceled their Cold Plasma Subscriptions earlier, i.e., prior to the expiration of the initial subscription period.

94.     Plaintiff and the members of the ARL Class seek restitution, attorneys' fees, and all other relief that the Court deems proper.

## COUNT II
### Violations of California's False Advertising Law ("FAL"),
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On behalf of Plaintiff and the False Sales Class)

95.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

96.     Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant.

97.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

98.     The FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." See Cal. Bus. & Prof. Code § 17501.

99.     Defendant has violated Sections 17500 and 17501 of the California Business and Professions Code.

100.     Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and the members of the False Sales Class.

101.     As alleged more fully above, Defendant advertises purported former prices along with discounts for the Cold Plasma Subscription. Defendant does this by representing that the purported 76% sale represents a significant discount off the Cold Plasma Subscription's regular price (*i.e.*, $245.50). Defendant also advertises false seasonal themes and fake countdown timers to create a sense of urgency. Reasonable consumers understand time-limited discounts and reference pricing as indicating the "former" and "regular" prices—*i.e.*, the amounts charged by Defendant before the temporary discount was implemented and those to be reinstated afterward.

102.     The reference prices advertised by Defendant are not the regular prices for the Cold Plasma Subscription, because Defendant never charged $244.50 for it – that price is a fiction. Moreover, for the same reasons, the reference price was not the true former price of the Cold Plasma Subscription, given the existence of perpetual sales on Defendant's Website.  Accordingly, Defendant's statements about the former prices of its Cold Plasma Subscriptions, and its statements about its discounts from those former prices, were untrue and misleading.  In addition, Defendant's statements that its discounts were available for a limited time were also false and misleading and were designed to give consumers a sense of urgency when, in fact, the purported sales price is perpetually available.

103.     Furthermore, Defendant has violated, and continues to violate, section 17501 of the FAL by advertising former prices for the Cold Plasma Subscription that were not the prevailing market price within three months immediately preceding the advertising.  As explained above, Defendant's advertised regular price for the Cold Plasma Subscription, which reasonable consumers would understand to denote its former price, was not its prevailing market price within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendant's advertisements do not indicate whether or when the purported former prices were offered at all

104. Defendant's actions in violation of the FAL, as described herein, were false and misleading, such that the general public is and was likely to be deceived.

105. Plaintiff and the members of the False Sales Class were not aware of Defendant's false discounts at the time they purchased the Cold Plasma Subscription.

106. As such, Plaintiff and the members of the False Sales Class saw, read, and reasonably relied on Defendant's statements and omissions to their detriment.

107. In addition, class-wide reliance can be inferred because Defendant's representations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to purchase the Cold Plasma Subscription.

108. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the False Sales Class.

109. Plaintiff and the members of the False Sales Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Cold Plasma Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Cold Plasma Subscription because the it was sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received subscriptions with market values lower than the promised market values.

110. Plaintiff and the members of the False Sales Class seek restitution, attorneys' fees, and all other relief that the Court deems proper.

## COUNT III
**Violations of California's Consumers Legal Remedies Act ("CLRA"),
Cal. Civ. Code §§ 1750, *et seq.*
(On behalf of Plaintiff and the ARL Class)**

111. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

112. Plaintiff brings this claim individually and on behalf of the members of the ARL Class against Defendant.

113.     Plaintiff and the members of the ARL Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the ARL Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

114.     Defendant's selection and/or subscription offers and the other products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b).  The purchases by Plaintiff and the ARL Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

115.     The acts and practices of Defendant as described above were intended to deceive Plaintiff and the ARL Class as described herein, and have resulted, and will result, in damages to Plaintiff and the ARL Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's representations and omissions about the nature of the Cold Plasma Subscriptions billing, cancellation, automatic payment terms, policies, and requirements conveyed that they have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

116.     Plaintiff and the members of the ARL Class suffered economic injury as a direct result of Defendant's conduct because they were induced to purchase Cold Plasma Subscriptions and/or pay renewal fees they would not have otherwise paid. Had Defendant fully and clearly disclosed the terms associated with the Cold Plasma Subscriptions, Plaintiff and the members of the ARL Class would not have subscribed to the Cold Plasma Subscriptions, or they would have canceled their Cold Plasma Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

117.     Plaintiff, on behalf of themselves and all other members of the ARL Class, seeks an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

118.     In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on November 12, 2025, informing Defendant of their intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt

requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend their complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

## COUNT IV
### Violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*
### (On behalf of Plaintiff and the False Sales Class)

119. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

120. Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant.

121. Plaintiff and the members of the False Sales Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the False Sales Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

122. Defendant's selection and/or subscription offers and the other products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b). The purchases by Plaintiff and the False Sales Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

123. The acts and practices of Defendant as described above were intended to deceive Plaintiff and the False Sales Class as described herein, and have resulted, and will result, in damages to Plaintiff and the False Sales Class. These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's representations and omissions about the nature of the Cold Plasma Subscription's discounts conveyed that they have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) Defendant's acts and practices constitute "false or

misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions," due to its false reference prices and fake limited-duration sales of its Cold Plasma Subscription in violation of Cal. Civil Code § 1770(a)(13).

124. Plaintiff and the members of the False Sales Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Cold Plasma Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Cold Plasma Subscription because it was sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received subscriptions with market values lower than the promised market values.

125. Plaintiff, on behalf of themselves and all other members of the False Sales Class, seek an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

126. In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on November 12, 2025, informing Defendant of their intention to seek damages under California Civil Code § 1750. The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend their complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

<u>**COUNT V**</u>
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of Plaintiff and the ARL Class)**

127. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

128. Plaintiff brings this claim individually and on behalf of the members of the ARL Class against Defendant.

129.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

130.     As alleged in detail above, and incorporated herein by reference, Defendant's deceptive enrollment process and false sales of the Cold Plasma Subscriptions violate the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; CLRA, Cal. Civ. Code § 1770, *et seq.*; the ARL, Cal. Bus. & Prof. Code § 17602, *et seq.*; and ROSCA, 15 U.S.C. § 8403 ,*et seq.*

131.     As alleged in detail above, Defendant violated the ARL and ROSCA by failing to: (a) provide the auto-renewal terms associated with its Cold Plasma Subscriptions "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Methods, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Cold Plasma Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

132.     Each of these acts and practices constitutes an independent violation of the ARL, ROSCA, the FAL, and CLRA, and thus an independent violation of the UCL.

133.     Defendant has also violated the UCL's proscription against engaging **in Unfair Business Practices.**  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to

consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

134. There is no public utility to Defendant's illegal automatic renewal practices and. The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason thereof, particularly considering the available legal alternatives for subscriptions in the marketplace. Defendant's illegal auto-renewal and false sales practices only injure healthy competition and harm consumers.

135. Plaintiff and the ARL Class could not have reasonably avoided this injury. Defendant's representations and omissions were deceptive to reasonable consumers like Plaintiff and the ARL Class members.

136. Defendant also violated established public policy by violating the ARL, FAL, CLRA, and ROSCA. The unfairness of these practices is tethered to the legislatively declared policy from each of those statutes.

137. Defendant has also violated the UCL's proscription against engaging **in Deceptive Business Practices.** As alleged in detail above, Defendant committed deceptive acts by enrolling consumers in automatically recurring subscriptions in violation of the FAL, CLRA, ARL and ROSCA.

138. Specifically, Defendant committed deceptive acts by including misleading language and omitting material facts about the auto-renewal features of the Cold Plasma Subscriptions. These representations were false and misleading.

139. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

* * *

140. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when enrolling in their Cold Plasma Subscriptions. Defendant's representations were a substantial factor in Plaintiff's purchasing decisions.

141.     In addition, class-wide reliance can be inferred because Defendant's representations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to enroll in the Cold Plasma Subscriptions and deciding when to cancel them.

142.     Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Cold Plasma Subscriptions are still used by Defendant today.

143.     Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the ARL Class.

144.     Plaintiff and the members of the ARL Class suffered economic injury as a direct result of Defendant's conduct because they were induced to purchase Cold Plasma Subscriptions and/or pay renewal fees they would not have otherwise paid.  Had Defendant fully and clearly disclosed the terms associated with the Cold Plasma Subscriptions, Plaintiff and the members of the ARL Class would not have subscribed to the Cold Plasma Subscriptions, or they would have canceled their Cold Plasma Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

145.     Furthermore, Plaintiff and the members of the ARL Class suffered economic injury as a direct result of Defendant's conduct because all products received from Defendant in violation of the ARL constitute "unconditional gifts."  *See* Cal. Bus. Prof. Code § 17603. As such, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and the ARL Class members in the form of payments made by Plaintiff and the ARL Class members for their Cold Plasma Subscriptions.

146.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the ARL Class members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT VI**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiff and the False Sales Class)**

147.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

148.    Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant.

149.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]"  Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

150.    As alleged in detail above, and incorporated herein by reference, Defendant's false sales of the Cold Plasma Subscription violate the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; CLRA, Cal. Civ. Code §§ 1770-01, *et seq.*; and the FTC, 16 C.F.R. § 233.1, *et seq.*

151.    As alleged in detail above, Defendant's false discounts and deceptive strike-through pricing of the Cold Plasma Subscription violate Sections 17500 and 17501 of the FAL (Cal. Bus. & Prof. Code §§ 17500-1) and Sections § 1770(a)(5), (9) and (13) of the CLRA. Cal. Civil Code § 1770. Furthermore, Defendant's false sales also violate Sections 233.1 and 233.2 of the FTC's regulations. 16 C.F.R. § 233.1

152.    Each of these acts and practices constitutes an independent violation of the FAL, CLRA, and FTC regulations and thus an independent violation of the UCL.

153.    Defendant has also violated the UCL's proscription against engaging **in Unfair Business Practices.**  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to

consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

154. There is no public utility to Defendant's false discounts. The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason thereof, particularly considering the available legal alternatives for sales offerings which exist in the marketplace. Defendant's false sales practices only injure healthy competition and harm consumers.

155. Plaintiff and the False Sales Class members could not have reasonably avoided this injury. Defendant's representations and omissions were deceptive to reasonable consumers like Plaintiff and the False Sales Class.

156. Defendant also violated established public policy by violating the FAL, CLRA, and FTC's regulations. The unfairness of these practices is tethered to the legislatively declared policy from each of those statutes.

157. Defendant has also violated the UCL's proscription against engaging **in Deceptive Business Practices.** As alleged in detail above, Defendant committed deceptive acts by marketing false discounts in violation of the FAL, CLRA, and FTC regulations.

158. Specifically, Defendant committed deceptive acts by misrepresenting that the Cold Plasma Subscription was on sale, that the sale was time-limited, that it had a specific regular price, and that consumers were receiving discounts. These representations were false and misleading.

159. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

* * *

160. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Cold Plasma Subscription. Defendant's representations were a substantial factor in Plaintiff's purchasing decision.

161. In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to purchase the Cold Plasma Subscription.

162.     Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the False Sales Class members are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Cold Plasma Subscription are still used by Defendant today.

163.     Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the False Sales Class.

164.      Plaintiff and the members of the False Sales Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Cold Plasma Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Cold Plasma Subscription because the it was sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received subscriptions with market values lower than the promised market values.

165.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the False Sales Class seek restitution, attorneys' fees, and all other relief that the Court deems proper.

<u>**COUNT XII**</u>
**Negligent Misrepresentation**
**(On behalf of Plaintiff and the ARL Class)**

166.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

167.     Plaintiff brings this claim individually and on behalf of the members of the ARL Class against Defendant under the laws of California.

168.     As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the ARL Class concerning the Cold Plasma Subscriptions' billing, cancellation, automatic payment terms, policies, and requirements.

169.     These representations were false.

170.      When Defendant made these misrepresentations and material omissions of fact, it knew or should have known that they were false or misleading. Defendant had no reasonable grounds

for believing that these representations were true or that the material omissions were not misleading when made.

171.    Defendant intended that Plaintiff and ARL Class members rely on these representations and material omissions of fact and Plaintiff reasonably relied on them.

172.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to enroll in Defendant's Cold Plasma Subscriptions.

173.    Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the ARL Class members.

174.    Plaintiff and the members of the ARL Class suffered economic injury as a direct and proximate result of Defendant's conduct because they were induced to purchase Cold Plasma Subscriptions and/or pay renewal fees they would not have otherwise paid. Had Defendant fully and clearly disclosed the terms associated with the Cold Plasma Subscriptions, Plaintiff and the members of the ARL Class would not have subscribed to the Cold Plasma Subscriptions, or they would have canceled their Cold Plasma Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

175.    For the negligent misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the ARL Class as a result of Defendant's unlawful conduct.

### COUNT XIII
### Negligent Misrepresentation
### (On behalf of Plaintiff and the False Sales Class)

176.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

177.    Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant under the laws of California.

178.    As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the False Sales Class concerning the Cold Plasma Subscriptions' discounts and reference prices.

179.    These representations were false.

180.    When Defendant made these misrepresentations and material omissions of fact, it knew or should have known that they were false or misleading. Defendant had no reasonable grounds for believing that these representations were true or that the material omissions were not misleading when made.

181.    Defendant intended that Plaintiff and the False Sales Class members rely on these representations and material omissions of fact and Plaintiff reasonably relied on them.

182.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to purchase Defendant's Cold Plasma Subscription.

183.    Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the False Sales Class members.

184.    Plaintiff and the members of the False Sales Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Cold Plasma Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Cold Plasma Subscription because the it was sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received subscriptions with market values lower than the promised market values.

185.    For the negligent misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the False Sales Class as a result of Defendant's unlawful conduct.

**<u>COUNT IX</u>**
**Intentional Misrepresentation**
**(On behalf of Plaintiff and the ARL Class)**

186.    Plaintiff hereby re-allege and incorporate by reference the allegations contained in all

preceding paragraphs of this complaint.

187. Plaintiff brings this claim individually and on behalf of the members of the ARL Class against Defendant under the laws of California.

188. As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the ARL Class concerning the Cold Plasma Subscriptions' billing, cancellation, automatic payment terms, policies, and requirements.

189. These representations and material omissions of fact were false and misleading.

190. When Defendant made these misrepresentations and material omissions of fact, it knew that they were false and misleading at the time they were made and/or Defendant acted recklessly in making the misrepresentations and omissions.

191. Defendant intended that Plaintiff and the members of the ARL Class members rely on these representations and material omissions of fact and Plaintiff reasonably relied on them.

192. In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to enroll in Defendant's Cold Plasma Subscriptions.

193. Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the ARL Class.

194. Plaintiff and the members of the ARL Class suffered economic injury as a direct and proximate result of Defendant's conduct because they were induced to purchase Cold Plasma Subscriptions and/or pay renewal fees they would not have otherwise paid. Had Defendant fully and clearly disclosed the terms associated with the Cold Plasma Subscriptions, Plaintiff and the members of the ARL Class would not have subscribed to the Cold Plasma Subscriptions, or they would have canceled their Cold Plasma Subscriptions earlier, i.e., prior to the expiration of the initial subscription period.

195. For the intentional misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Classes as a result of Defendant's unlawful conduct.

**COUNT X**
**Intentional Misrepresentation**
**(On behalf of Plaintiff and the False Sales Class)**

196.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

197.     Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant under the laws of California.

198.     As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the False Sales Class concerning the Cold Plasma Subscriptions' discounts and reference prices.

199.     These representations and material omissions of fact were false and misleading.

200.     When Defendant made these misrepresentations and material omissions of fact, it knew that they were false and misleading at the time they were made and/or Defendant acted recklessly in making the misrepresentations and omissions.

201.     Defendant intended that Plaintiff and the False Sales Class members rely on these representations and material omissions of fact and Plaintiff reasonably relied on them.

202.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to purchase Defendant's Cold Plasma Subscription.

203.     Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the False Sales Class members.

204.      Plaintiff and the members of the False Sales Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Cold Plasma Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Cold Plasma Subscription because the it was sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received subscriptions with market values lower than the promised market values.

205. For the intentional misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the False Sales Class as a result of Defendant's unlawful conduct.

### COUNV XI
### Unjust Enrichment / Restitution
### (On behalf of Plaintiff and the ARL Class)

206. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

207. Plaintiff brings this claim individually and on behalf of the members of the ARL Class against Defendant under the laws of California, in the alternative.

208. Plaintiff and the Classes conferred benefits on Defendant by purchasing the Cold Plasma Subscriptions.

209. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the ARL Class purchases of the Cold Plasma Subscriptions. Retention of those monies under these circumstances is unjust and inequitable because Defendant's misrepresentations and material omissions of fact regarding the Cold Plasma Subscriptions, in violation of California and federal laws, induced Plaintiff and the members of the ARL Class to purchase the Cold Plasma Subscriptions under false pretenses. These material misrepresentations and omissions of fact caused injuries to Plaintiff and the members of the ARL Class because they would not have purchased the Cold Plasma Subscriptions at all, or on the same terms, if the true facts were known.

210. Due to Defendant's misrepresentations and violation of California and federal laws, its contracts with Plaintiff and the members of the ARL Class are void or voidable.

211. Plaintiff and the members of the ARL Class seek restitution, and in the alternative, rescission.

212. For the quasi-contract/unjust enrichment claims, Plaintiff seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the members of the ARL Class as a result of Defendant's unlawful conduct.

## COUNV XII
### Breach of Contract
### (On behalf of Plaintiff and the False Sales Class)

213. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

214. Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant under the laws of California.

215. Plaintiff and the False Sales Class members entered into contracts with Defendant when they placed orders to purchase the Cold Plasma Subscription.

216. The contracts provided that Plaintiff and the False Sales Class members would pay Defendant for the Cold Plasma Subscription ordered.

217. The contracts further required that Defendant provide Plaintiff and the False Sales Class members with a Cold Plasma Subscription that has a market value equal to the regular prices displayed on the Website. They also required that Defendant provide Plaintiff and the False Sales Class members with the discount equal to the difference between the price paid and the regular prices advertised. These were specific and material terms of the contract.

218. The listed regular price, and specific discounts, were a specific and material term of each contract, and were displayed to Plaintiff and the False Sales Class members at the time they placed their orders.

219. Plaintiff and the False Sales Class members paid Defendant for the Cold Plasma Subscription they ordered, and satisfied all other conditions of their contracts.

220. Defendant breached the contracts with Plaintiff and the False Sales Class members by failing to provide the Cold Plasma Subscription that had a regular price, former price, and/or prevailing market value equal to the regular price displayed on its Website, and by failing to provide the promised discount.

221. Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's California headquarters and to Defendant's California registered agent on November 12, 2025.

222. As a direct and proximate result of Defendant's breaches, Plaintiff and the False Sales Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

223. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the False Sales Class as a result of Defendant's unlawful conduct.

## COUNV XIII
### Breach of Express Warranty
### (On behalf of Plaintiff and the False Sales Class)

224. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

225. Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant under the law of California.

226. Defendant, as the marketer, distributor, supplier, and seller of the Cold Plasma Subscription, issued material, written warranties by advertising that the Cold Plasma Subscription had a market value equal to the regular price displayed on Defendant's Website. This was an affirmation of fact about the Cold Plasma Subscription (i.e., a representation about the market value) and a promise relating to the goods.

227. This warranty was part of the basis of the bargain and Plaintiff and members of the False Sales Class relied on this warranty.

228. In fact, the stated market value was not the market value. Thus, the warranty was breached.

229. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's California headquarters and to Defendant's California registered agent on November 12, 2025.

230. Plaintiff and the False Sales Class members were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Cold Plasma Subscription if they had known that the warranty

was false, (b) they overpaid for the Cold Plasma Subscription because the Cold Plasma Subscription was sold at a price premium due to the warranty, and/or (c) they did not receive the Cold Plasma Subscription as warranted that they were promised.

231. For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the False Sales Class as a result of Defendant's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the Classes and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Classes;

b. For an order declaring Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d. For actual, expectation, reliance, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For recission, restitution and all other forms of equitable relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: November 20, 2025                    Respectfully submitted,


                                            By:   _/s/ Adrian Gucovschi_____

Adrian Gucovschi (SBN 360988)
**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (SBN 360988)
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

**-and-**

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com


*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Adrian Gucovschi, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.

I am a partner at Gucovschi Law Firm, PLLC, counsel of record for Plaintiff Victoria Joyce in this action. Plaintiff alleges that she is a citizen of California who resides in Livermore, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that Defendant Guthy-Renker LLC regularly does business in the Northern District of California, and a substantial portion of the events alleged in the Complaint, including the same misrepresentations, omissions, and injures as alleged herein, have occurred in this judicial District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida, on November 20, 2025.

_/s/ Adrian Gucovschi_
Adrian Gucovschi