Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM, PLLC**
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

*Counsel for Plaintiff and Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA JOYCE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GUTHY-RENKER LLC,<br><br>Defendant. | Case No. 3:25-cv-09998-RFL<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>(DEMAND FOR JURY TRIAL) |

Plaintiff Victoria Joyce brings this action on behalf of herself and all others similarly situated against Defendant Guthy-Renker LLC.  Plaintiff makes the following allegations pursuant to the investigation of her counsel and upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

**INTRODUCTION**

1.     This is a putative class action lawsuit against Defendant for engaging in an illegal false discount scheme.

2.     Defendant sells a wide range of cosmetics aimed at treating skin conditions through various online channels, including on its website, www.subd.com (the "Website"), and in advertisements on social-media sites, including Instagram. Defendant has engaged in a widespread deceptive pricing scheme to induce consumers to purchase its promotional "Neck & Face Firming Kit" and "Cold Plasma Sub-D+" (the "Products") by falsely advertising massive discounts from a purported strikethrough price that Defendant never charges. Defendant also represents that these offers are limited-time sales and use countdown timers, even though the same sale is always available. This deceptive discount pricing scheme misleads reasonable consumers into believing they are receiving an extraordinary limited-time deal, and it violates California's prohibitions on false advertising and misleading pricing.

3.     For the foregoing reasons, Plaintiff brings this action individually and on behalf of all purchasers of any of Defendant's Products who, within the applicable statute of limitations period up to and including the date of judgment in this action, were induced by Defendant's false sales in purchasing the Products.  Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (1) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (4) negligent misrepresentation; (5) intentional misrepresentation; (6) breach of contract; and (7) breach of express warranty.

**THE PARTIES**

4.      Plaintiff Victoria Joyce is, and at all times relevant hereto was, a citizen and resident of Livermore, California. On or about June 10, 2025, Plaintiff purchased Defendant's Neck & Face Firming Kit and Cold Plasma Sub-D+ at a purportedly discounted rate of $59.95 and $20.00, respectively. At the time she made her purchase, Plaintiff saw and relied on Defendant's $245.50 strikethrough price and the "76% OFF" discount. The representations that Plaintiff relied on are virtually identical in design and layout to the pictures depicted below from Defendant's Website. *Infra*, ¶¶ 20-21. After clicking on the proceed to checkout button, Plaintiff was presented with Defendant's "Cold Plasma Plus+ Sub-D/Neck" which was available for "only $20 more" from a purported "Special Offer" that would expire within a few hours depicted on a countdown timer. *Id.* ¶ 22.  Believing she was obtaining a limited-time deal, Plaintiff clicked on the "upgrade now" button. The webpage that Plaintiff saw and relied on is depicted below. *Id.* Finally, when Plaintiff arrived at the checkout page, Defendant presented her with an order summary which included the "Neck & Face Firming Kit" along with the additional "Cold Plasma Sub-D+" in a single line for a total of $79.95 (excluding shipping and taxes) discounted from a purported strikethrough price of $265.50 which equaled $185.55 in "Total Savings." *Id.* ¶ 23. The checkout page that Plaintiff saw and relied on before completing her purchase is depicted below. *Id.*

5.      Despite Defendant's multiple representations that she was purchasing the "Neck & Face Firming Kit" from a $245.50 strikethrough price with a "76% OFF" discount, Defendant had not sold the Products at $245.50 in the 3 prior months before her purchase, nor did it sell it at that price afterwards. Furthermore, the "Cold Plasma Sub-D+" upgrade was available for "$20 more" both 3 months before and after her purchase – and when the countdown timer ran out, it simply reset.

6.      Had Plaintiff been aware that the limited-time sale was not genuine, she would not have purchased the Products at all or on the same terms. Plaintiff also paid a premium for the Products due to Defendant's false discount representations, time-pressure tactics, and misleading sales practices. The facts giving rise to Plaintiff's claims are materially the same as those of other members of the Class she seeks to represent.

7.      Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which of Defendant's regular prices, discounts, and sales—if any—are truthful. For example, while she could watch Defendant's Website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in her missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future and cannot purchase the Products she otherwise would.

8.      Defendant Guthy-Renker LLC is a Delaware corporation that maintains its corporate headquarters and principal place of business in El Segundo, California. Defendant is an online-based retailer of cosmetics aimed at repairing skin conditions, which it sells to consumers on its Website and through social media advertisements to consumers nationwide, including throughout California.

9.      Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

### JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this is a putative class action where the aggregate amount sought by members of the proposed class exceeds $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different from Defendant.

11.     Personal jurisdiction and venue are proper because Defendant has, at all times relevant hereto, systematically and continually conducted, and continues to conduct, business in California, including within this judicial District, through the promotion, marketing, and sale of its Products, which gave rise to Plaintiff's injury.

## FACTUAL BACKGROUND

**A.    California's and FTC's Ban on Fake Discounts**

12.    Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they believe that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else. California law provides clear guidelines as to permissible and unlawful sales tactics:

13.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with misleading regular prices and deceptive discounts—is illegal.

14.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale when it actually is not.

15.    Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, California's False Advertising Law also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

16.    In addition, California's Consumers Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

17.    The Federal Trade Commission's regulations also prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

18.     As numerous courts have found, fake sales violate these laws. They also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

**B.     Defendant's fake sales are unlawful and misleading.**

19.     Defendant has long employed a deceptive "fake sale" pricing scheme to lure customers into purchasing its Products. The scheme centers on advertising the Products as being on sale at a steep discount from a purported higher strike-through price, all the time, thereby creating a false impression of a limited-time bargain.

20.     On its Website and promotional materials, Defendant prominently displays its false discounts. For example, on November 11, 2025, Defendant advertised an "Exclusive Savings" sale with a "76% OFF" representation:[1]



21.     After clicking on the Shop Now button, consumers are led to another webpage which again shows the "76% OFF" discount alongside a $245.50 strikethrough price:

---

[1] The pictures are virtually identical to the webpages Plaintiff viewed at the time of her purchase.



22.    After clicking on the "Proceed to Checkout" button, the Website leads to another webpage where consumers are enticed to purchase the "Cold Plasma Plus+ Sub-D/Neck" Products for "only $20 more" from a purported "Special Offer" that would expire within a few hours:



23.    Finally, when consumers arrive at the checkout page, Defendant presents an order summary which included the "Neck & Face Firming Kit" (priced $59.95) along with the additional "Cold Plasma Sub-D+" (priced $20) in a single line totaling $79.95 (excluding shipping and taxes). The Products are sold with a purported strikethrough price of $265.50, which equaled $185.55 in "Total Savings":



24.    Reasonable consumers understand the discount language and strikethrough prices to mean that they represent Defendant's regular, non-sale prices, for its Neck & Face Firming Kit and that they are being given a time-limited opportunity to buy it at a discount from the regular price. Similarly, consumers understand Defendant's special offer with countdown timers to upgrade their order for "only $20 more" to mean that they would be unable to attain the Cold Plasma Sub-D+ Products in the future.

25.    In reality, however, Defendant ***never*** charges $245.50 for the Products. Instead, it is an inflated reference point that Defendant uses to make its perpetual sale look legitimate. Thus, $245.50 is a false former price that overstates the Products' true value and misleads consumers about the purported savings.

26.     In addition to its false and misleading reference price, the "Exclusive Savings" sales event with a "76% OFF" promotion is effectively never-ending. Similarly, Defendant's time-limited sale of the "Cold Plasma Sub-D+" is false – the upgrade is always available and as soon as the countdown timer ends, it resets again.  Each of these promotions indicates that the discount is tied to a specific time frame or event, and that the price may increase after the event. However, Defendant's sales are perpetually available.

27.     To verify that Defendant always offers the Products at the purported $59.95 discounted price, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine. That investigation confirms Defendant's perpetual sales in the same layout and design as the sample pictures above.

| Date | Savings Claim | Strikethrough Price | Sale Price |
|------|---------------|---------------------|------------|
| 11-Sep-25 | **SAVE 76%** | ~~$245.50~~ | **$59.95** |
| 3-Aug-25 | **SAVE 76%** | ~~$245.50~~ | **$59.95** |
| 14-Jul-25 | **SAVE 76%** | ~~$245.50~~ | **$59.95** |
| 11-Jun-25 | **SAVE 76%** | ~~$245.50~~ | **$59.95** |
| 21-May-25 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 25-Apr-25 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 16-Mar-25 | **2 Free Gifts** | No Price Shown | NA |
| 1-Feb-25 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 23-Jan-25 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 10-Dec-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 13-Oct-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 17-Sep-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 15-Aug-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 15-Jul-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 15-Jun-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 16-May-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 16-Apr-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 15-Mar-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 12-Feb-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 17-Jan-24 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 16-Dec-23 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 14-Nov-23 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 15-Oct-23 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 15-Sep-23 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 16-Aug-23 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 14-Jul-23 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 15-Jun-23 | **SAVE 25%** | ~~$79.95~~ | **$59.96** |
| 17-May-23 | **SAVE 25%** | ~~$79.95~~ | **$59.96** |
| 17-Apr-23 | **SAVE 25%** | ~~$79.95~~ | **$59.96** |
| 15-Mar-23 | **SAVE 25%** | ~~$79.95~~ | **$59.96** |
| 15-Feb-23 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |
| 13-Jan-23 | **SAVE 25%** | ~~$79.95~~ | **$59.95** |

28.     Defendant's fake discount pricing scheme violates California's laws and FTC regulations. Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the Website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the Website would reasonably believe that there happened to be another sale—especially when Defendant changes the names of its sales despite offering the same or a similar discount. Discovering Defendant's deception required extensive mining of internet archives.

29.     Defendant's misrepresentations regarding the price and discount of the Products were material to consumers' decisions. A reasonable consumer attaches importance to whether a time-limited sale is genuine; a large discount implies substantial savings and often triggers an urgent desire to buy now rather than later (to avoid missing out). As studies have found, "[n]early two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3] Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[4]

30.     Had consumers known that Defendant's discounts were always available, and that the strikethrough reference price was false, they would not have been influenced by the urgency or perceived value of the offer. As a result, Plaintiff and the Class members made a purchase they might have postponed or foregone and otherwise paid a premium for the Products due to Defendant's deceptive conduct.

31.     As set forth in further detail below, Plaintiff's claims, which are based on Defendant's use of false discounts, constitute "unlawful" conduct under the UCL. Plaintiff's claims are also based on Defendant's practice of false discounts, which also violates the "fraudulent" and "unfair" prongs of the UCL. Additionally, Plaintiff brings this action against Defendant for violations of the CLRA and FAL, negligent misrepresentation, intentional misrepresentation, breach of contract, and breach of express warranty.

[2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying behavior/.

[3] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (https://www.prnewswire.com/news releases/retailmenot-surveydeals- and-promotional-offers-drive-incremental-purchases-online especially-among-millennial-buyers-300635775.html).

[4] 7https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

**No Adequate Remedy at Law**

32.    For her equitable relief claims, Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Class are inadequate because they are not equally prompt, certain, and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the FAL and UCL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

33.    Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Products are determined to be an amount less than the total expenditure for the Products. Without compensation for the full price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

34.    Equitable relief is also appropriate because statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL, CLRA, as well as negligent and intentional misrepresentations. Thus, Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

35.    The scope of actionable misconduct under the FAL and UCL is broader than the other causes of action asserted herein. The FAL and UCL broadly prohibit Defendant's fraudulent discount marketing scheme to gain an unfair advantage over competitors and to exploit consumers' desire to obtain time-limited bargains. Plaintiff's breach of contract, warranty, and common law

claims, on the other hand, are more limited—focusing on the specific duties and obligations arising from Defendant's misrepresentations and omissions at the point of sale. Those claims are also potentially limited by Defendant's disclaimers of warranties and limitations of liability contained in its Terms and Conditions (described more fully below), while the UCL and FAL are pre-contractual statutory torts that do not fall within the scope of the Terms at all. Furthermore, the UCL creates a cause of action for violations of laws that do not themselves provide for a private cause of action (such as the FTC's ban on false discounts).

36.    Finally, Plaintiff faces an imminent threat of future harm that only an injunction under the FAL and UCL can remedy. Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected the former prices and the market value of the Products, and that Defendant's discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which of Defendant's regular prices, discounts, and sales—if any—are truthful. Thus, she is unable to rely on Defendant's advertising in the future, and so cannot purchase the Products she would like to purchase.

### Adequacy of Pre-Suit Notice

37.    Defendant's pre-established contractual position—set forth in its browsewrap Terms and Conditions[5]—is that no warranty or pricing obligation existed to cure. And to the extent that any such obligation existed, Defendant was not required to provide any relief beyond a 60-day money-back guarantee. The purpose of California Commercial Code § 2607(3)(A) notice is to give the seller an opportunity to cure. Defendant's terms make it clear that any cure notice would have been futile.

38.    Defendant's terms "expressly disclaim[] all warranties of any kind, whether express or implied." The terms also provide that Defendant "does not warrant that product descriptions are accurate, complete, reliable, current, or error-free" — the category encompassing the strikethrough prices and discount representations at issue — and that "[n]o advice or information, whether oral or

---

[5] The Terms and Conditions were archived on May 21, 2025 – a few weeks before Plaintiff's June 10, 2025 purchase – and are materially identical to the ones currently available. https://web.archive.org/web/20250521050902/https://subd.com/policies/terms-of-service#Refund (last accessed May 20, 2026); see also https://subd.com/policies/terms-of-service (last accessed May 20, 2026).

written, obtained by you from Guthy-Renker or through the Website shall create any warranty not expressly made herein." The terms further provide that Defendant "reserves the right, without prior notice, to discontinue or change specifications and prices on products without incurring any obligation to you," and that Defendant "assume[s] no responsibility for any consequence relating directly or indirectly to any action or inaction you take based on the information, services, or other material on the Website." Even where Defendant identifies a pricing error, Defendant "reserves the right to revoke any stated offer to correct any errors, inaccuracies, or omissions, including after an order has been submitted, after it has been confirmed, or after your credit card has been charged." Defendant's terms reserve the right not only to deny that a breach exists but to withdraw any corrective offer at any stage of the transaction.

39. Defendant's terms separately limit the available remedy and foreclose class-wide relief. The terms provide that the "sole remedy" for any product not "as described" is to return it "in an unused and undamaged condition"— a condition Plaintiff can no longer satisfy. The terms exclude all "indirect, special, incidental, or consequential damages" on "any theory of liability, whether for breach of contract, tort (including negligence and strict liability) or otherwise." And the terms provide that consumers "may only bring a claim in your individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding[.]" Plaintiff's notice letter demanded class-wide restitution. Defendant's terms deny that class claims exist or that Plaintiff was entitled to any remedies at all.

40. Despite these disclaimers, Defendant maintains the operational infrastructure to process refunds rapidly. Defendant offers a "60-Day Money-Back Guarantee" providing customers who are "not completely satisfied" a "full refund" of the purchase price (less shipping and handling). Defendant's Return/Refund Policy separately commits to processing refunds "within 7 business days" of receipt of a returned product, and directs customers who are "uncertain about [their] right to return" to call Customer Service at a dedicated line 800-725-1783.

41. Defendant received Plaintiff's notice letter at its California headquarters via certified mail on November 17, 2025. The letter identified the specific Products, the date of purchase, and the deceptive conduct, and demanded corrective action. Defendant took no action — no refund, no

response, no acknowledgment — despite having both the contractual obligation to engage and the operational infrastructure to process a refund within days. Three days were adequate because the length of the notice period was never an obstacle to cure. Defendant's terms were.

**CLASS ACTION ALLEGATIONS**

42.    ***Class Definition***.  Plaintiff brings this action on behalf of a class of similarly situated individuals, defined as follows (collectively, the "Class"):

> All persons in the United States who, within the applicable limitation period, up to and including the date of final judgment in this action, purchased any of the Products at a purported discount.

43.    Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

44.    Specifically excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

45.    ***Numerosity.***  The Class is so numerous that their individual joinder herein is impracticable.  On information and belief, the Class comprises at least millions of consumers.  The precise number of the members of the Class and their identities are unknown to Plaintiff at this time but may be determined through discovery.  The members of the Class may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

46.    ***Commonality and Predominance.***  Common questions of law and fact exist as to all the members of the Class and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to: (a) whether Defendant's Products were sold at the reference price within 90 days of Plaintiff's and the Class members' purchases; (b) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (c) whether Plaintiff and the Class are entitled to damages and/or restitution; (d) whether Defendant should be enjoined from further engaging in

the misconduct alleged herein; and (e) whether Plaintiff and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

47.    **Typicality.**  The claims of Plaintiff are typical of the claims of the members of the Class because, like other members of the Class, she purchased the Products relying on the representations and omissions made by Defendant that the Products were being sold at a discount from their false reference pricing.

48.    **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has no interests antagonistic to the Class's interests, and Plaintiff has retained counsel that has considerable experience and success in prosecuting complex class actions and consumer-protection cases.

49.    **Superiority**.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

50.    Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

51.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and the Class and will likely retain the benefits of its wrongdoing.

52.    Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

**COUNT I**
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On behalf of Plaintiff and the Class)**

53.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

54.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

55.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

56.    The FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." *See* Cal. Bus. & Prof. Code § 17501.

57.    Defendant has violated Sections 17500 and 17501 of the California Business and Professions Code.

58.    Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and the members of the Class.

59.    As alleged more fully above, Defendant advertises purported former prices along with discounts for the Products. Defendant does this by representing that the purported "_% OFF" and strikethrough pricing represents a significant discount off the Products' regular price. Defendant also advertises false seasonal themes and fake countdown timers to create a sense of urgency. Reasonable consumers understand time-limited discounts and reference pricing as indicating the

"former" and "regular" prices—*i.e.*, the amounts charged by Defendant before the temporary discount was implemented and those to be reinstated afterward.

60.    The reference prices advertised by Defendant are not the regular prices for the Products because Defendant never charged that amount.  Moreover, for the same reasons, the reference price was not the true former price of the Products, given the existence of perpetual sales on Defendant's Website.  Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading.  In addition, Defendant's statements that its discounts were available for a limited time were also false and misleading and were designed to give consumers a sense of urgency when, in fact, the purported sales price is perpetually available.

61.    Furthermore, Defendant has violated, and continues to violate, section 17501 of the FAL by advertising former prices for the Products that were not the prevailing market price within three months immediately preceding the advertising.  As explained above, Defendant's advertised regular price for the Products, which reasonable consumers would understand to denote its former price, was not its prevailing market price within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

62.    Defendant's actions in violation of the FAL, as described herein, were false and misleading, such that the general public is and was likely to be deceived.

63.    Plaintiff and the members of the Class were not aware of Defendant's false discounts at the time they purchased the Products.

64.    As such, Plaintiff and the members of the Class saw, read, and reasonably relied on Defendant's statements and omissions to their detriment.

65.    In addition, class-wide reliance can be inferred because Defendant's representations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to purchase the Products.

66.     Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the Class.

67.     Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because they were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

68.     Plaintiff and the members of the Class seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

## COUNT II
### Violations of California's Consumers Legal Remedies Act ("CLRA"),
### Cal. Civ. Code §§ 1750, *et seq.*
### (On behalf of Plaintiff and the Class)

69.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

70.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

71.     Plaintiff and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

72.     Defendant's Products are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b).  The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

73.     The acts and practices of Defendant as described above were intended to deceive Plaintiff and the Class as described herein, and have resulted, and will result, in damages to Plaintiff and the Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's representations and omissions about the nature of the Products' discounts conveyed that they have characteristics, uses, and/or benefits, which they do not, in violation of Cal.

Civil Code §1770(a)(5); (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) Defendant's acts and practices constitute "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions," due to its false reference prices and fake limited-duration sales of its Products in violation of Cal. Civil Code § 1770(a)(13).

74.     Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because it was sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

75.     Plaintiff, on behalf of herself and all other members of the Class, seek an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

76.     In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on November 12, 2025, informing Defendant of her intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. Defendant failed to correct its business practices or provide the requested relief within 30 days. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Accordingly, Plaintiff seeks, in addition to injunctive relief, monetary damages from Defendant, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

**COUNT III**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of Plaintiff and the Class)**

77.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

78.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

79.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

80.    As alleged in detail above, and incorporated herein by reference, Defendant's false sales of the Products violate the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; CLRA, Cal. Civ. Code §§ 1770, *et seq.*; and the FTC, 16 C.F.R. § 233.1, *et seq.*

81.    As alleged in detail above, Defendant's false discounts and deceptive strike-through pricing of the Products violate Sections 17500 and 17501 of the FAL (Cal. Bus. & Prof. Code §§ 17500-1) and Sections § 1770(a)(5), (9) and (13) of the CLRA. Cal. Civil Code § 1770. Furthermore, Defendant's false sales also violate Sections 233.1 and 233.2 of the FTC's regulations. 16 C.F.R. § 233.1

82.    Each of these acts and practices constitutes an independent violation of the FAL, CLRA, and FTC regulations and thus an independent violation of the UCL.

83.    Defendant has also violated the UCL's proscription against engaging **in Unfair Business Practices.**  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

84.    There is no public utility to Defendant's false discounts. The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason thereof, particularly considering the available legal alternatives for sales offerings which exist

in the marketplace. Defendant's false sales practices only injure healthy competition and harm consumers.

85.     Plaintiff and the Class members could not have reasonably avoided this injury. Defendant's representations and omissions were deceptive to reasonable consumers like Plaintiff and the Class.

86.     Defendant also violated established public policy by violating the FAL, CLRA, and FTC's regulations. The unfairness of these practices is tethered to the legislatively declared policy from each of those statutes.

87.     Defendant has also violated the UCL's proscription against engaging **in Deceptive Business Practices.**  As alleged in detail above, Defendant committed deceptive acts by marketing false discounts in violation of the FAL, CLRA, and FTC regulations.

88.     Specifically, Defendant committed deceptive acts by misrepresenting that the Products were on sale, that the sale was time-limited, that it had a specific regular price, and that consumers were receiving discounts. These representations were false and misleading.

89.     Defendant's representations were misleading to Plaintiff and other reasonable consumers.

* * *

90.     For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products. Defendant's representations were a substantial factor in Plaintiff's purchasing decision.

91.     In addition, class-wide reliance can be inferred because Defendant's representations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to purchase the Products.

92.     Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class members are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Products are still used by Defendant today.

93. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the Class.

94. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because they were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

95. Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

**COUNT IV**
**Negligent Misrepresentation**
**(On behalf of Plaintiff and the Class)**

96. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

97. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the laws of California.

98. As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the Class concerning the Products' discounts and reference prices.

99. These representations were false.

100. When Defendant made these misrepresentations and material omissions of fact, it knew or should have known that they were false or misleading. Defendant had no reasonable grounds for believing that these representations were true or that the material omissions were not misleading when made.

101. Defendant intended that Plaintiff and the Class members rely on these representations and material omissions of fact and Plaintiff reasonably relied on them.

102.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to purchase Defendant's Products.

103.    Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class members.

104.    Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because they were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

105.    For the negligent misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**COUNT V**
**Intentional Misrepresentation**
**(On behalf of Plaintiff and the Class)**

106.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

107.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the laws of California.

108.    As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the Class concerning the Products' discounts and reference prices.

109.    These representations and material omissions of fact were false and misleading.

110.    When Defendant made these misrepresentations and material omissions of fact, it knew that they were false and misleading at the time they were made and/or Defendant acted recklessly in making the misrepresentations and omissions.

111. Defendant intended that Plaintiff and the Class members rely on these representations and material omissions of fact and Plaintiff reasonably relied on them.

112. In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to purchase Defendant's Products.

113. Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class members.

114. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because they were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

115. For the intentional misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**COUNT VI**
**Breach of Contract**
**(On behalf of Plaintiff and the Class)**

116. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

117. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the laws of California.

118. Plaintiff and the Class members entered into contracts with Defendant when they placed orders to purchase the Products.

119. The contracts provided that Plaintiff and the Class members would pay Defendant for the Products ordered.

120. The contracts further required that Defendant provide Plaintiff and the Class members with Products that have a market value equal to the regular prices displayed on the Website. They also required that Defendant provide Plaintiff and the Class members with the discount equal to the difference between the price paid and the regular prices advertised. These were specific and material terms of the contract.

121. The listed regular price, and specific discounts, were a specific and material term of each contract, and were displayed to Plaintiff and the Class members at the time they placed their orders.

122. Plaintiff and the Class members paid Defendant for the Products they ordered, and satisfied all other conditions of their contracts.

123. Defendant breached the contracts with Plaintiff and the Class members by failing to provide the Products that had a regular price, former price, and/or prevailing market value equal to the regular price displayed on its Website, and by failing to provide the promised discount.

124. Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's California headquarters and to Defendant's California registered agent on November 12, 2025.

125. As a direct and proximate result of Defendant's breaches, Plaintiff and the Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

126. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## COUNT VII
### Breach of Express Warranty
### (On behalf of Plaintiff and the Class)

127. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

128.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the law of California or the states of the Class members whose warranty laws are substantially similar to those in California.[6]

129.    Defendant, as the marketer, distributor, supplier, and seller of the Products, issued material, written warranties by advertising that the Products had a market value equal to the regular price displayed on Defendant's Website. This was an affirmation of fact about the Products (*i.e.*, a representation about the market value) and a promise relating to the goods.

130.    This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

131.    In fact, the stated market value was not the market value. Thus, the warranty was breached.

132.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's California headquarters and to Defendant's California registered agent on November 12, 2025.

133.    Plaintiff and the Class members were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

[6]While discovery may alter the following, Plaintiff asserts that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; A.R.S. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2 313; Ga. Code § 11-2-313; HRS § 490:2- 313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; K.S.A. § 84-2-313; KRS § 355.2-313; 11 M.R.S. § 2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2 313; Neb. Rev. Stat. § 2- 313; Nev. Rev. Stat. Ann. § 104.2313; RSA 382-A:2 313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; ORC Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72-3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws, § 57A 2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46- 2-313; and Wyo. Stat. § 34.1-2-31.

134.    For her breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the Class and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order declaring Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.    For actual, expectation, reliance, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For recission, restitution and all other forms of equitable relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: May 20, 2026                          Respectfully submitted,

By:    _/s/ Adrian Gucovschi_
        Adrian Gucovschi (SBN 360988)

**GUCOVSCHI LAW FIRM, PLLC.**
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230

- 27 -
SECOND AMENDED CLASS ACTION COMPLAINT

Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

**-and-**

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com


*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Adrian Gucovschi, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.

I am a partner at Gucovschi Law Firm, PLLC, counsel of record for Plaintiff Victoria Joyce in this action.  Plaintiff alleges that she is a citizen of California who resides in Livermore, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that Defendant Guthy-Renker LLC regularly does business in the Northern District of California, and a substantial portion of the events alleged in the Complaint, including the same misrepresentations, omissions, and injures as alleged herein, have occurred in this judicial District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida, on May 20, 2026.

/s/ Adrian Gucovschi
Adrian Gucovschi