Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM, PLLC**
165 Broadway, 23rd Floor
New York, New York 10006
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA JOYCE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GUTHY-RENKER LLC,<br><br>Defendant. | Case No. 3:25-cv-09998-RFL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STRIKE CLASS ALLEGATIONS OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(b)(6)**<br><br>Hearing Date: July 28, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 15 – 18th Floor<br>Complaint Filed: November 20, 2025<br>SAC Filed: May 20, 2026 |

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................3

I.  Defendant Waived Any Right to Compel Arbitration, and the Second Amended Complaint Did Not Revive that Waiver. ...............................................................................................3

II.  No Agreement to Arbitrate Was Ever Formed. ...................................................................6

III.  Equitable Estoppel Cannot Supply the Assent Defendant Concedes Is Missing. ..................7

A.  Equitable estoppel does not retroactively sign an unexecuted contract................................8

B.  Plaintiff's claims do not depend on the Terms of Service. .......................................................9

C.  Estoppel requires a direct benefit, not an incidental one. .....................................................10

IV.  Even if the Terms Applied, the Arbitration Provision Is Unenforceable. ...........................11

A.  The delegation clause does not divert the dispositive questions from the Court...................11

B.  The arbitration provision is unconscionable. ........................................................................11

C.  The class-action waiver is void under McGill, and the provision's poison pill voids it in its entirety...........................................................................................................................................13

V.  Plaintiff Has Adequately Pleaded Pre-Suit Notice..............................................................14

VI.  Plaintiff Adequately Alleges that She Lacks an Adequate Remedy at Law. .......................17

CONCLUSION ....................................................................................................................19

OPPOSITION  TO DEFENDANT'S MOTION TO COMPEL ARBITRATION  OR DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Ahlstrom v. DHI Mortgage Co.,*
 21 F.4th 631 (9th Cir. 2021).................................................................................................. 6, 7, 11

*Alvarez v. Chevron Corp.,*
 656 F.3d 925 (9th Cir. 2011) ...................................................................................................... 14, 15

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
 24 Cal. 4th 83 (2000)........................................................................................................................ 11

*Armstrong v. Michaels Stores, Inc.,*
 59 F.4th 1011 (9th Cir. 2023)............................................................................................................. 4

*Big Easy Studios, LLC v. United States,*
 No. 17-879, 2026 U.S. Claims LEXIS 805 (Fed. Cl. Apr. 17, 2026)......................................... 8

*Blair v. Rent-A-Center, Inc.,*
 928 F.3d 819 (9th Cir. 2019) .......................................................................................................... 13

*Borowsky v. Tree Top, Inc.,*
 No. 3:25-cv-05533, 2026 WL 719695 (N.D. Cal. Mar. 16, 2026) (Lin, J.) ............................ 17

*Broomes v. FullBeauty Brands Operations, LLC,*
 No. 24-cv-03558-RFL, 2025 WL 3548680 (N.D. Cal. Dec. 11, 2025) (Lin, J.)..... 2, 4, 5, 7, 11

*Burton v. Ghosh,*
 961 F.3d 960 (7th Cir. 2020) ............................................................................................................ 5

*Cabot v. Lectric eBikes LLC,*
 No. 3:24-cv-06446, 2025 WL 2256328 (N.D. Cal. Aug. 7, 2025) (Lin, J.)...................... 17, 18

*Caccuri v. Sony Interactive Ent. LLC,*
 735 F. Supp. 3d 1139 (N.D. Cal. 2024)............................................................................................ 4

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.,*
 169 Cal. App. 4th 116 (2008)......................................................................................................... 16

*Castillo v. Prime Hydration LLC,*
 748 F. Supp. 3d 757 (N.D. Cal. 2024)..................................................................................... 18, 19

*Coinbase, Inc. v. Suski,*
 602 U.S. 143 (2024) ............................................................................................................................ 7

*Comer v. Micor, Inc.,*
 436 F.3d 1098 (9th Cir. 2006)......................................................................................................... 10

*Discover Bank v. Superior Court,*
 36 Cal. 4th 148 (2005)...................................................................................................................... 13

*Ford Motor Warranty Cases,*

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR DISMISS

17 Cal. 5th 1122 (2025).................................................................................................. 7, 8

*Gostev v. Skillz Platform, Inc.,*
  88 Cal. App. 5th 1035 (2023)............................................................................................ 12

*Graham v. Honeywell Int'l Inc.,*
  No. 3:23-cv-04865, 2025 WL 2694416 (N.D. Cal. Sep. 22, 2025) (Lin, J.)......................... 18

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
  561 U.S. 287 (2010) ......................................................................................................... 6

*Grimbaldeston v. Saraya USA, Inc.,*
  No. 3:25-cv-05649, 2025 WL 3677857 (N.D. Cal. Dec. 17, 2025) (Lin, J.) ........................ 17

*Heckman v. Live Nation Entertainment, Inc.,*
  120 F.4th 670 (9th Cir. 2024)................................................................................ 11, 12, 13

*Hodges v. Comcast Cable Commc'ns, LLC,*
  21 F.4th 535 (9th Cir. 2021)............................................................................................. 13

*In re Google Assistant Priv. Litig.,*
  No. 19-cv-04286-BLF, 2024 WL 251407 (N.D. Cal. Jan. 23, 2024)..................................... 4

*Jackson v. Amazon.com, Inc.,*
  65 F.4th 1093 (9th Cir. 2023)............................................................................................. 6

*Keating v. Superior Court,*
  31 Cal. 3d 584 (1982), rev'd on other grounds sub nom. Southland Corp. v. Keating, 465 U.S. 1
      (1984)........................................................................................................................ 5

*Keller Found./Case Found. v. Tracy,*
  696 F.3d 835 (9th Cir. 2012)............................................................................................. 8

*Kim v. Hanlees Seven, Inc.,*
  No. 18-cv-00472-JSW, 2019 WL 13256105 (N.D. Cal. July 1, 2019) ................................. 6

*Kramer v. Toyota Motor Corp.,*
  705 F.3d 1122 (9th Cir. 2013)............................................................................................ 9

*Krinsk v. SunTrust Banks, Inc.,*
  654 F.3d 1194 (11th Cir. 2011) .......................................................................................... 5

*Lackie Drug Store, Inc. v. OptumRx, Inc.,*
  143 F.4th 985 (8th Cir. 2025)......................................................................................... 5, 6

*Martin v. Yasuda,*
  829 F.3d 1118 (9th Cir. 2016) ..................................................................................... 4, 11

*McGill v. Citibank, N.A.,*
  2 Cal. 5th 945 (2017)...................................................................................................... 13

*Metowski v. Traid Corp.,*
  28 Cal. App. 3d 332 (1972)............................................................................................. 15

*Namisnak v. Uber Techs., Inc.,*

971 F.3d 1088 (9th Cir. 2020)............................................................................................. 9

*Nguyen v. Barnes & Noble Inc.,*

763 F.3d 1171 (9th Cir. 2014) .............................................................................. 7, 8, 10

*Olson v. FCA US LLC,*

176 F.4th 612 (9th Cir. 2026)............................................................................................. 11

*Phillips v. Brooklyn Bedding LLC,*

No. 23-cv-03781-RFL, 2024 WL 2830663 (N.D. Cal. Mar. 28, 2024) (Lin, J.).............. 17, 18

*Plows v. Rockwell Collins, Inc.,*

812 F. Supp. 2d 1063 (C.D. Cal. 2011) ............................................................................ 4

*Pollard v. Saxe & Yolles Dev. Co.,*

12 Cal. 3d 374 (1974)...................................................................................................... 15

*Ponkey v. LLR, Inc.,*

No. 24-5729, 2025 WL 3034693 (9th Cir. Oct. 30, 2025) ...................................................... 12

*Roffman v. Rebbl, Inc.,*

653 F. Supp. 3d 723 (N.D. Cal. 2023)................................................................................ 19

*Ronderos v. USF Reddaway, Inc.,*

114 F.4th 1080 (9th Cir. 2024)......................................................................................... 12

*Schlueter-Beckner v. SimpliSafe, Inc.,*

No. 3:25-cv-01764, 2025 WL 2162948 (N.D. Cal. July 30, 2025)........................................... 9

*Snarr v. HRB Tax Group, Inc.,*

839 F. App'x 53 (9th Cir. 2020)........................................................................................ 13

*Soltero v. Precise Distribution,*

102 Cal. App. 5th 887 (2024)............................................................................................ 8

*Steiner v. Vi-Jon Inc.,*

723 F. Supp. 3d 784 (N.D. Cal. 2024)................................................................................ 17

*Whitfield v. Jessup,*

31 Cal. 2d 826 (1948)....................................................................................................... 15

*Young v. Solana Labs, Inc.,*

No. 22-cv-03912-RFL, 2024 U.S. Dist. LEXIS 160371 (N.D. Cal. Sep. 3, 2024) (Lin, J.) ... 10

**Statutes and Rules**

16 C.F.R. § 233.1............................................................................................................. 18

Fed. R. Civ. P. 8(d)(2)–(3)............................................................................................... 17

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR DISMISS

**INTRODUCTION**

On February 26, 2026, Defendant Guthy-Renker, LLC ("Defendant") moved to dismiss Plaintiff's First Amended Complaint, arguing that Plaintiff had not sufficiently alleged facts to support her claims – including the adequacy of her presuit notice. ECF 21.

On April 29, 2026, the Court rejected the majority of those arguments, but dismissed Plaintiff's equitable claims as well as her breach of contract and express warranty claims with leave to amend to allege additional facts to support the claims. ECF 25 (the "Order"). However, the Court decreed that, "[t]he amended complaint *may not add new claims* or parties, *or otherwise change the allegations* except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties[.]" Order at 8.

On May 20, 2026, Plaintiff filed her Second Amended Complaint ("SAC") alleging that her presuit notice was adequate as evidenced by Defendant's contractual predisposition within its unenforceable browsewrap terms of service (the "Terms"). ECF 27 at ¶¶ 37-41. Defendant now moves to compel arbitration based on those unenforceable terms after litigating this case for 7-months. ECF 28 (the "Motion"). It contends that the SAC materially changed the posture of the case by changing the legal theory. But the Court decreed that Plaintiff could not do so without first obtaining leave. Plaintiff did not and could not materially change the nature or posture of this case because the Court forbade it.

The SAC did not add any new claims, parties, or legal theories. It merely referenced Defendant's Terms, including its refund policy, as circumstantial evidence to plausibly allege that her "three days' notice might be sufficient" because Defendant had "already implemented a standardized refund procedure for the products at issue." *Compare* Order at 5-6 *with* SAC ¶ 40 (alleging that "Defendant maintains the operational infrastructure to process refunds rapidly" because it provides a "60-Day Money-Back Guarantee' providing customers who are 'not completely satisfied' a 'full refund" of the purchase price[.]'"). These allegations mirror the exact scenario that the Court envisioned in its Order. The case has not changed in any material respect and Defendant cannot show that it is entitled to revoke its 7-month arbitration waiver. But even if it could, arbitration will still not follow. Defendant concedes that Plaintiff did not assent to the Terms.

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR DISMISS

Instead, it asks the Court to retroactively sign the arbitration agreement on her behalf. That is an absurd, not equitable, request. That request is also foreclosed as a matter of law.

*First*, Defendant waived arbitration. It moved under Rule 12(b)(6) to dismiss Plaintiff's claims on the merits three times now. Seeking and obtaining a merits ruling is the paradigmatic act inconsistent with the right to arbitrate, as this Court already held in *Broomes v. FullBeauty Brands Operations, LLC*, No. 24-cv-03558-RFL, 2025 WL 3548680, at *1 (N.D. Cal. Dec. 11, 2025) (Lin, J.). The curative Second Amended Complaint revived nothing.

*Second*, no agreement to arbitrate was ever formed. Defendant's motion concedes that Plaintiff never assented to its Terms. And equitable estoppel is not a substitute for assent to a defective browsewrap agreement presented through a footer hyperlink. That is a formation question this Court decides regardless of any delegation clause.

*Third*, Plaintiff's claims do not depend on the Terms at all. Her false-advertising claims arise from Defendant's deceptive "76% OFF" pricing and countdown timers presented on the Website. The Court already held that those claims are plausible before Plaintiff referenced the Terms, and the claims continue to be plausible. The Terms are so draconian that they happen to support the timeliness of Plaintiff's presuit notice. But as the Court held, Plaintiff could simply refile them again in "a separate lawsuit that complies with Section 2607." Order at 6. The Terms are not intertwined with Plaintiff's claims, nor are they essential to them. Factual evidence and testimony, not the Terms, will prove that three days was timely notice based on Defendant's customer dispute procedures.

*Fourth*, even if the Terms were validly entered into (they were not), arbitration would still not follow. The Terms are unconscionable several times over — a one-sided one-year limitations period, a court-access carve-out reserved to Defendant alone, and an illusory unilateral-modification right — and its class-action waiver violates California's *McGill* rule. By the provision's own poison-pill term, that defect voids the entire arbitration provision.

Defendant's alternative motion to dismiss fares no better. When the Court dismissed Plaintiff's contract and warranty claims for inadequate pre-suit notice, it granted leave to plead the one circumstance it identified as potentially sufficient — that "a company has already implemented a standardized refund procedure for the product at issue." Order at 5–6. The SAC pleads it. Defendant

maintains the operational infrastructure to process refunds rapidly: a "60-Day Money-Back Guarantee," a Return/Refund Policy committing to refunds "within 7 business days," and a dedicated customer-service line for return questions. (SAC ¶¶ 40–41.) A company so equipped to cure could have answered Plaintiff's demand. It did nothing. The brevity of the notice period was never the obstacle to cure — Defendant's customer dispute procedures, *as evidenced* by the Terms, were the problem.

Equitable jurisdiction is properly pleaded as well. The Court dismissed Plaintiff's FAL and UCL restitution prayers because the prior complaint gave no factual basis to conclude that "the same amount of money for the exact same harm is inadequate or incomplete." Order at 6. The SAC now supplies that basis. It alleges that the FAL and UCL reach a broader range of conduct than the CLRA and Plaintiff's other claims. The FAL and UCL also afford relief the legal claims cannot: (i) restitution reaches all of Defendant's profits from the wrongdoing, not merely the sums it took plus interest; (ii) the FAL and UCL require fewer elements of proof; and (iii) the UCL's four-year limitations period runs a year longer than the periods governing the FAL, the CLRA, and the misrepresentation claims, so class members who purchased outside those shorter periods can recover only in equity. SAC ¶¶ 32–35. Those are factual allegations of inadequacy, not the conclusory contrasts the Court rejected, and they place Plaintiff's equitable claims properly before the Court.

For these reasons, and as further alleged herein, the Court should deny the Motion in its entirety.

### ARGUMENT

### I. DEFENDANT WAIVED ANY RIGHT TO COMPEL ARBITRATION, AND THE SECOND AMENDED COMPLAINT DID NOT REVIVE THAT WAIVER.

The Court need not even reach whether Defendant's arbitration clause is enforceable because Defendant waived the right to compel arbitration. A party waives the right to compel arbitration when it (1) has "knowledge of an existing right to compel arbitration" and (2) takes "intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). The issue of waiver is a gateway question "presumptively for a court and not an arbitrator to decide." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016).

**Knowledge.** The first element is easily met because "knowledge of a contractual right to arbitrate is imputed to [defendant] as the contract's drafter." *In re Google Assistant Priv. Litig.*, No. 19-cv-04286-BLF, 2024 WL 251407 at *4 (N.D. Cal. Jan. 23, 2024) (Freeman, J.) (quoting *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011)). Defendant expressly acknowledged that the agreement existed: the declaration of its president in support of its first motion to dismiss attested to the "five underlined hyperlinks" that appeared on Plaintiff's checkout page, including the "Terms of Service." (ECF No. 14-1 ¶ 5.)

**Inconsistent acts.** Defendant took inconsistent acts by filing not one but three motions to dismiss, including the present one. (ECF No. 14 (motion to dismiss filed January 22, 2026); ECF No. 21 (motion to dismiss filed February 26, 2026).) *Broomes*, 2025 WL 3548680, at *1 ("FullBeauty also took acts inconsistent with an intention to compel arbitration by filing a motion to dismiss on the merits of Broomes's claims."). Defendant's first motion to dismiss argued that it complied with the Automatic Renewal Law as a matter of law. (ECF No. 14 at 10–14.) Its second motion to dismiss argued that no evidence supported Plaintiff's claim that the Products were always on sale (ECF No. 21 at 7–9) and that the economic loss doctrine barred Plaintiff's negligent misrepresentation claim (ECF No. 21 at 11–12). Those motions "sought disposition of issues going to the crux of the class claims" and resulted in the Court dismissing "all claims to the extent they relate to the Plasma alleged misrepresentations." (Order at 7.) *In re Google Assistant Priv. Litig.*, 2024 WL 251407 at *6 (rejecting the argument that the defendants' motions to dismiss and motion for summary judgment were directed solely at the individual plaintiffs' claims where the motions resulted in dismissal of three claims on the merits and the summary-judgment motion sought disposition "of issues going to the crux of the class claims"); *Caccuri v. Sony Interactive Ent. LLC*, 735 F. Supp. 3d 1139, 1155 (N.D. Cal. 2024) (same). Thus, Defendant's litigation conduct waived arbitration not only as to Plaintiff but also as to the putative class.

**The Second Amended Complaint revived nothing.** The California Supreme Court has long held that an amendment does not "per se, nullify a previous, effective waiver of arbitration," and that any reopening is limited to "issues newly raised." *Keating v. Superior Court*, 31 Cal. 3d 584, 608 (1982), *rev'd on other grounds sub nom. Southland Corp. v. Keating*, 465 U.S. 1 (1984). Revival

occurs only where the amendment "unexpectedly changes the scope or theory of the plaintiff's claims," such as amending a class definition that "open[s] the door to thousands — if not tens of thousands — of new class plaintiffs not contemplated in the original class definition." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1203 (11th Cir. 2011). By the same logic, courts have applied revival where an amended complaint adds new claims or parties, because a waiver "only applies to claims that were actually pled, not hypothetical ones not yet raised." *Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 995 (8th Cir. 2025). But merely adding evidentiary detail to the same claim against the same party does not revive, where the amended complaint "did not add a new cause of action, change the theory of liability, change the parties, assert new claims, or otherwise transform the litigation in any way" but instead added detail "to existing factual allegations." *Burton v. Ghosh*, 961 F.3d 960, 968 (7th Cir. 2020).

This Court rejected an identical revival argument in *Broomes*. There, because the defendant "d[id] not suggest that Broomes expanded the scope of, or materially changed, her own claims," the amended complaint "d[id] not affect the waiver analysis." *Broomes*, 2025 WL 3548680, at *1. So too here. The Second Amended Complaint adds no new claim, party, class definition, or factual theory. There is no newly asserted — much less newly arbitrable — claim that escaped Defendant's earlier waiver, and Defendant's motions to dismiss were directed at these very claims. The Court's leave to amend was confined to curing the notice deficiency it identified: Plaintiff "may not add new claims or parties or otherwise change the allegations." (Order at 8.) That is precisely what Plaintiff did.

Defendant's contrary position — that Plaintiff "pivoted to a different theory" by invoking the Terms as evidence of futility, Mot at 1 — mistakes Plaintiff's evidence for Plaintiff's claim. The Terms are not an element of any claim. Timely pre-suit notice is the element. The Terms are tangential circumstantial evidence of why that notice was adequate because, as the Court elucidated in its Order, "in some circumstances three days' notice might be sufficient — such as where a company has already implemented a standardized refund procedure." (Order at 5–6.) The Second Amended Complaint added additional facts about Defendant's standardized refund procedure, but that changes the evidence, not the scope or theory of the case. Defendant cannot rescind its arbitration

waiver simply because Plaintiff added new evidence to support her existing claims, rather than adding new claims or parties. Adding new evidence to support a claim is the whole purpose of litigation. Amending a pleading to incorporate publicly available information, such as the Terms, does not "'unexpectedly' and dramatically changed the scope of this litigation." *Kim v. Hanlees Seven, Inc.*, No. 18-cv-00472-JSW, 2019 WL 13256105, at *4 (N.D. Cal. July 1, 2019) *accord Lackie Drug Store, Inc.*, 143 F.4th at 996 (holding that adding "specific allegations" to "focus the claims on the named defendant" is not unexpected, especially where the defendant had previously attacked the pleading as insufficient under Rule 8(a)).

Having asked this Court to decide Plaintiff's claims on the merits, Defendant cannot relitigate the same dispute in an inferior forum where it knows Plaintiff's claims will be gutted. Because Defendant knew of its asserted right to arbitrate, litigated the merits to a ruling, and the amended complaint did not change the scope of the claims at-issue, it waived arbitration, and the motion should be denied on that basis alone.

## II. NO AGREEMENT TO ARBITRATE WAS EVER FORMED.

Even if waiver were set aside, the Motion fails because no arbitration agreement was formed — a question this Court decides regardless of the delegation clause. The party seeking to compel arbitration bears the burden of proving an agreement to arbitrate exists. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023). "[P]arties cannot delegate issues of formation to the arbitrator," and the court must decide whether an agreement was formed "before enforcing a delegation clause." *Ahlstrom v. DHI Mortgage Co.*, 21 F.4th 631, 635 (9th Cir. 2021). "If no agreement to arbitrate was formed, then there is no basis upon which to compel arbitration." *Id.*; *see Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010) (a court orders arbitration only when satisfied the agreement was formed). This Court applied that formation-first rule in *Broomes*, citing *Ahlstrom*.

Defendant's Motion concedes the dispositive fact: it does not contend Plaintiff assented to the Terms at all. That concession is fatal here because Defendant's website presented its Terms through a browsewrap — a footer hyperlink that no consumer was required to see or click before purchasing. (SAC ¶ 37.) This Court's own formation analysis in *Broomes* found notice insufficient where the hyperlink to terms was not visually distinguished even though it sat near the action button.

*Broomes*, 2025 WL 3548680, at *3. Defendant's footer hyperlink is less conspicuous still. To the extent Defendant invokes the delegation clause to send the issue of formation to the arbitrator, *Ahlstrom* forecloses it: formation is for the Court even where a delegation clause exists. *Ahlstrom*, 21 F.4th at 635. Because Defendant concedes that Plaintiff did not assent to the Terms, it cannot carry its burden to prove a formed agreement, the motion fails at this threshold as well.

## III. EQUITABLE ESTOPPEL CANNOT SUPPLY THE ASSENT DEFENDANT CONCEDES IS MISSING.

Equitable estoppel cannot supply the assent that an enforceable arbitration agreement requires. The doctrine presupposes a contract: it bars a party from disavowing an agreement that exists, but it does not manufacture one that never existed. "[A]rbitration is strictly a matter of consent," and "the first question in any arbitration dispute must be: What have these parties agreed to?" *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1129 (2025) (quoting *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024)). Where the answer is that the parties "have not agreed to anything," estoppel cannot close the gap, because the doctrine "typically applies to third parties who benefit from an agreement made between two primary parties," not to a consumer the drafter insists is herself a party. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014). Defendant does not contend that Plaintiff assented to an arbitration agreement. Instead, it asks the Court to adjudicate her rights as though she did. Estoppel does not permit that.

*Nguyen v. Barnes & Noble* is directly on point. There, a website operator sought to compel a consumer to arbitrate under terms posted on its site and argued that the consumer's invocation of the choice of law provision within the terms in his complaint estopped him from disclaiming the arbitration clause beside it. *Nguyen*, 763 F.3d at 1179. The Ninth Circuit rejected that argument on those grounds. It first held that the consumer was "not the type of non-signatory contemplated by the rule," because equitable estoppel "typically applies to third parties who benefit from an agreement made between two primary parties," not to the very person the operator failed to form a contract with. *Id*. But even if it did, the court was "unable to find any case law holding that reliance on a contract's choice of law provision in itself constitutes a 'direct benefit,'" and any benefit the consumer derived was "merely incidental." *Id*. *Nguyen* is on all fours: it involved the same

browsewrap terms of service, that the plaintiff never assented to, with the same litigation-benefit estoppel theory. *Nguyen* forecloses both halves of Defendant's argument.

### A. Equitable estoppel does not retroactively sign an unexecuted contract.

California law is in accord. Estoppel is among the "limited exceptions" to the rule that "one must be a party to an arbitration agreement to be bound by it or invoke it," *Soltero v. Precise Distribution*, 102 Cal. App. 5th 887, 892–893 (2024), and each exception presupposes an agreement the nonsignatory's claims depend upon — the *sine qua non* being that the claims "must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause." *Soltero*, 102 Cal. App. 5th at 893. The doctrine operates on a contract that exists, it does not conjure one. That is why the California Supreme Court frames the threshold inquiry as one of consent—where the parties "have not agreed to anything," there is no agreement for estoppel to enforce. *Ford Motor Warranty Cases*, 17 Cal. 5th at 1136.

Equitable estoppel "does not create new rights, affirmative duties, or liabilities where none previously existed," and its application is "strictly limited by equitable considerations." *Keller Found./Case Found. v. Tracy*, 696 F.3d 835, 847 (9th Cir. 2012); *accord Big Easy Studios, LLC v. United States*, No. 17-879, 2026 U.S. Claims LEXIS 805, at *60 (Fed. Cl. Apr. 17, 2026) ("[E]quitable estoppel is inapplicable when "there was no contract, because [a]n estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made") (cleaned up).

Defendant's theory collides with that principle. It concedes Plaintiff never assented to the Terms— its browsewrap required no consumer to see or click them before purchasing (SAC ¶ 37) — and then asks the Court to treat Plaintiff's litigation reference to those Terms as the assent it cannot otherwise prove. A consumer who quotes a contract to explain why a statutory prerequisite was excused has not signed it, and the Court cannot sign it for her. Because Defendant identifies no agreement Plaintiff ever joined, estoppel has nothing to operate on.

**B. Plaintiff's claims do not depend on the Terms of Service.**

Equitable estoppel also fails because none of Plaintiff's claims is intertwined with the Terms. A nonsignatory's claims reach arbitration through estoppel only where they are "founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause"; "merely 'mak[ing] reference to' an agreement with an arbitration clause is not enough." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013). Plaintiff's claims under UCL, FAL, and CLRA are pre-contractual statutory violations: they target Defendant's deceptive sales and discounts — that precontractual conduct is unlawful irrespective of whether the Terms existed. *See Schlueter-Beckner v. SimpliSafe, Inc.*, No. 3:25-cv-01764, 2025 WL 2162948, at *9 (N.D. Cal. July 30, 2025) (holding that false-advertising claims about a product's sale "do not fall under the Terms of Service" because they "pertain to improper advertisement for the . . . sale" and "have nothing to do with" the contract's terms; even a broadly worded arbitration clause "ha[s] an outer bound.").

Plaintiff's contract-based claims are no different. Her claims for breach of express warranty and breach of contract rest on the same advertised representations — the genuine discount Defendant promised and never delivered — not on any term contained within the Terms. The warranty Plaintiff seeks to enforce is Defendant's public representation that consumers were paying a real "76% OFF" price, not the arbitration clause buried in terms Plaintiff never accepted. Plaintiff's claims were and will also be "fully viable without any reference to" the Terms. *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1095 (9th Cir. 2020).

Defendant contends that Plaintiff's breach of contract and warranty claims are intertwined with the Terms because she now invokes them to satisfy the presuit element. She does not. The presuit element is satisfied by (a) sending the notice; and (b) providing the party with sufficient time to cure the breach before filing suit. While the Terms support the inference that Defendant had sufficient time to cure the breaches, the ultimate determination of that issue will be determined from discovery evidencing Defendant's internal refund and cancellation policies, its actual handling of comparable demands, and the testimony of its own personnel. That evidence will likely supplant the Terms entirely. The existence of unexecuted browsewrap terms is incidental in every sense: it supplies none of the rights or remedies behind Plaintiff's claims and confers no benefit on Plaintiff.

Those rights and remedies arise from Defendant's deceptive representations and its failure to deliver the discounts it advertised, *not* from terms Plaintiff never accepted. "In other words, [Plaintiff] cited the [] TOS to argue" that a longer presuit notice wait period "was irrelevant to her claims." *Young v. Solana Labs, Inc.*, No. 22-cv-03912-RFL, 2024 U.S. Dist. LEXIS 160371, at *24 (N.D. Cal. Sep. 3, 2024) (Lin, J.) (emphasis added). "That does not suffice to show that [Plaintiff's] claims 'intimately rely' on the [] TOS." *Id.*

### C. Estoppel requires a direct benefit, not an incidental one.

Defendant's theory also fails because Plaintiff drew no benefit from the Terms, let alone the direct benefit estoppel demands. A nonsignatory may be compelled to arbitrate only where she "'knowingly exploits' the benefits of the agreement and receives benefits flowing directly from the agreement." *Nguyen*, 763 F.3d at 1178–79; *accord Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes"). In *Nguyen*, the Ninth Circuit held that "reliance on a contract's choice of law provision" does not confer a "direct benefit," but rather, at best, a "merely incidental" one. *Nguyen*, 763 F.3d at 1179.

*Nguyen* applies with greater force here. The Terms did not provide Plaintiff any benefit at all. The draconian provisions Plaintiff quotes involve how Defendant disclaims responsibility for any malfeasance and otherwise eliminates a customer's rights and remedies. Defendant's contention that Plaintiff somehow benefited from the Terms is a perversion of justice. To the contrary, the Terms are so unconscionable, that they provide an exculpatory justification for a shorter presuit time-window: there is no reason to wait on a party that has already telegraphed, in writing, that they will not honor a claimant's rights. Defendant has not shown (because it cannot) that Plaintiff knowingly exploited the Terms or drew any direct benefit from them.

## IV. EVEN IF THE TERMS APPLIED, THE ARBITRATION PROVISION IS UNENFORCEABLE.

### A. The delegation clause does not divert the dispositive questions from the Court.

Defendant's delegation clause changes nothing as to the grounds that decide this motion. Formation and waiver are non-delegable: the Court decides formation even where a delegation clause exists, *Ahlstrom*, 21 F.4th at 635, and waiver by litigation conduct is likewise "presumptively for a court," *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) — as this Court confirmed in *Broomes*. The clause therefore does not reach Parts I and II.

As to the remaining questions, there is nothing to delegate and the delegation clause is itself challenged. A delegation clause cannot send arbitrability to an arbitrator where no valid agreement exists between the movant and the party it seeks to compel: "*Henry Schein* does not create an exception to the general rule that only the parties to an arbitration agreement can enforce it." *Olson v. FCA US LLC*, 176 F.4th 612, 619 (9th Cir. Apr. 7, 2026). The Ninth Circuit rejected precisely Defendant's reading — that a valid delegation clause ends the inquiry regardless of who invokes it — explaining that *Henry Schein* "was not asked to consider whether a delegation clause requires delegating the arbitrability question to an arbitrator when there is *not* a valid arbitration agreement between the party moving to compel arbitration and the party it is seeking to compel," and that the contrary view "would lead to absurd results." *Id.* Plaintiff also specifically challenges the delegation clause as unconscionable for the reasons stated in Part IV.B, which apply to the delegation clause itself. *See Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 688 (9th Cir. 2024) (unconscionability analysis applies equally to the delegation clause and the agreement as a whole).

### B. The arbitration provision is unconscionable.

The provision is unconscionable under both prongs of California's sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Procedurally, the Terms are a contract of adhesion presented on a take-it-or-leave-it basis with no opportunity to negotiate, and a deemed-consent browsewrap compounds the "oppression" and "surprise" that define procedural unconscionability. *See id.* at 113–14.

Substantively, the provision is one-sided in numerous ways. First, it imposes a one-year limitations period that runs from when the claim "arose" — which deprives the consumer of the delayed-discovery rule and the continuing-violation doctrine and "shorten[s]" the UCL's four-year and the CLRA's three-year periods; that one-sided filing provision is substantively unconscionable. *Ponkey v. LLR, Inc.*, No. 24-5729, 2025 WL 3034693, at \*2 (9th Cir. Oct. 30, 2025) (one-year bar "substantially shortens the time to bring a claim," is "unilateral," and forces waiver of California's discovery rule); *Gostev v. Skillz Platform, Inc.*, 88 Cal. App. 5th 1035, 1060 (2023) (one-year limitation reducing the UCL and CLRA periods substantively unconscionable). Second, it reserves to Defendant alone the right to seek injunctive relief in court — the same kind of "one-sided . . . preliminary injunction carve-out (which exempts from arbitration only [the drafter's] claims for preliminary injunctive relief)" that the Ninth Circuit held substantively unconscionable. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1094 (9th Cir. 2024). Third, the unilateral modification term — under which Defendant may change the Terms in its "sole discretion" and "continued use" is deemed acceptance — is illusory and reinforces the lack of mutuality. *See Heckman*, 120 F.4th at 683 ("[A] customer . . . could then be required to bring any dispute regarding that same purchase before [the arbitration provider] merely because the customer opened Defendants' website at some later date . . . . Even standing alone, this provision is procedurally unconscionable under California law."). An arbitration agreement whose terms can be altered unilaterally, applied retroactively, and accepted unknowingly is not a contract — it is the illusion of one.

These defects cannot be severed. Where an agreement "contains more than one unlawful provision," it "can be considered permeated by unconscionability," a severability clause is not dispositive, and "there are no bright line numerical rules regarding severance." *Ronderos*, 114 F.4th at 1102–1103. Multiple one-sided provisions reflect a systematic effort to impose an inferior forum, and the interests of justice are not served by rewriting the provision into enforceability. The provision is unenforceable.

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR DISMISS

**C. The class-action waiver is void under *McGill*, and the provision's poison pill voids it in its entirety.**

The class-action waiver cannot be severed and enforced as a stand-alone bar to class relief if arbitration is denied. It is embedded in the same dispute-resolution package as the delegation clause, the mass-arbitration protocol, the notice precondition, and the one-year forfeiture, and a court will not sever one favorable term from an integrated, systematically one-sided scheme. *See Heckman*, 120 F.4th at 689 ("declining to sever the offending provision" of an arbitration agreement which "contained multiple unconscionable provisions."). If the arbitration architecture is unconscionable, Defendant cannot invoke the FAA's solicitude for bilateral arbitration to preserve the waiver: this case fits the *Discover Bank* pattern — a consumer adhesion contract, claims that predictably involve small sums, and an alleged scheme to cheat large numbers of consumers through phantom discounts. *Heckman*, 120 F.4th at 690 (quoting *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162 (2005)).

The waiver independently fails because it forecloses public injunctive relief. Under California's *McGill* rule, a contractual provision purporting to waive the right to seek public injunctive relief in any forum is unenforceable as contrary to public policy. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017). The FAA does not preempt that rule, which is a generally applicable contract defense rather than one that singles out arbitration. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 827–31 (9th Cir. 2019).

Plaintiff seeks exactly the relief *McGill* protects. Public injunctive relief is "limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole," and "[t]he paradigmatic example would be the sort of injunctive relief sought in *McGill* itself, where the plaintiff sought an injunction against the use of false advertising to promote a credit protection plan." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021). Plaintiff's prayer to enjoin Defendant's deceptive "76% OFF" and countdown-timer advertising going forward seeks to stop future deception aimed at the general buying public, not relief that benefits only past purchasers. *See Snarr v. HRB Tax Group, Inc.*, No. 19-17441, 839 F. App'x. 53 (9th Cir. Dec. 9, 2020) (relief enjoining deceptive practices directed at the public is public

injunctive relief even where the plaintiff used the defendant's services and benefits only incidentally).

Because the class-action waiver is unenforceable for either reason, the provision's poison pill controls: by its own terms, if the class-action waiver is unenforceable, the entire arbitration provision is "null and void." With the waiver gone, no enforceable arbitration provision remains to compel under, and the motion to strike the class allegations fails for the same reason — the waiver it invokes is void. Whether or not Defendant's merits litigation forfeited its reliance on that waiver, an unenforceable waiver cannot bar class relief. The class-action waiver stands or falls on its own enforceability, and it falls.

## V. PLAINTIFF HAS ADEQUATELY PLEADED PRE-SUIT NOTICE.

Defendant marketed reference prices at which its products had never sold, and now seeks the dismissal with prejudice of Plaintiff's contract and warranty claims because her pre-suit notice reached Defendant three days, rather than some longer and unspecified interval, before she filed suit. The Court has already identified the circumstance that answers whether so short an interval is reasonable. Dismissing the prior complaint with leave to amend, the Court invited allegations of "circumstances that might plausibly render the three-day notice period reasonable," and named the controlling one: a case "where a company has already implemented a standardized refund procedure for the product at issue." (Order at 5–6.) The Second Amended Complaint pleads precisely that. Defendant maintains a standing, unconditional "60-Day Money-Back Guarantee" that refunds any customer "not completely satisfied," a policy that processes refunds "within 7 business days," and a dedicated customer-service line for refund requests. (SAC ¶ 40.) Whether three days was a reasonable interval against that standing refund machinery is a question of circumstance, and on a motion to dismiss it cannot be resolved against Plaintiff.

Plaintiff gave the pre-suit notice the statute requires. Defendant received her certified letter — identifying the Products, the date of purchase, and the deceptive conduct, and demanding corrective action — three days before suit. (SAC ¶ 41.) This is not *Alvarez*, where the plaintiffs served their notice of breach at the same moment they filed, leaving no pre-suit interval at all. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011). The pre-suit-notice requirement is met; the

only question is whether three days was reasonable. Reasonableness under section 2607 turns on the particular circumstances, and may be decided as a matter of law only where the undisputed facts permit a single inference. *See Whitfield v. Jessup*, 31 Cal. 2d 826, 832 (1948). The circumstances Plaintiff pleads admit of more than one, which ends the inquiry on a motion to dismiss.

The purpose of the notice requirement confirms that three days sufficed here. Notice exists to give the seller "opportunity for repairing the defective item, reducing damages, . . . and negotiating settlements." *Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal. 3d 374, 380 (1974). A seller that has already committed, by standing policy, to refund every dissatisfied customer needs no interval of deliberation to serve that purpose; it made the decision in advance. That distinguishes this case from the prior pleading, which the Court faulted because three days did not "plausibly provide Guthy-Renker's general counsel with enough time to analyze Joyce's legal demand, assess its strength, and then make the determination of what compensation, if any, to provide." (Order at 5.) Where a standing guarantee has already answered that question, three days is not too short for the seller to do what it has promised to do within days.

Defendant's motion also ignores the class dimension and Defendant's own knowledge of the breach. California courts do not wield section 2607 as a mechanical bar to a consumer class action: warranty claims survive the pleading stage even though each member's timely notice may be litigated later as to damages, and "where the merchandise was sold under circumstances which indicate that the seller acted in bad faith and was aware of the breach at the time of the sale, demand for notice of the breach from each and every member of the class may be a meaningless ritual." *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972). Defendant set reference prices it knew its products had never commanded: it cannot claim ignorance of the breach it now faults Plaintiff for not announcing sooner.

Defendant's reliance on the seven-business-day figure misreads the pleading. Those seven days are the time to process a refund once a returned product is received — fulfillment logistics, not the time to decide whether to honor Defendant's own guarantee. (SAC ¶ 40.) Section 2607 requires a reasonable opportunity to cure, not a completed cure before suit, and Defendant's standing "no questions asked" guarantee removes the very deliberation the Court identified rather than requiring

it. Plaintiff alleges as much: Defendant had "the operational infrastructure to process a refund within days," and "the length of the notice period was never an obstacle to cure." (SAC ¶¶ 40–41.)

Defendant's Terms confirm that the length of the interval was never the obstacle. They "expressly disclaim[] all warranties of any kind" and reserve the right to "revoke any stated offer to correct any errors, inaccuracies, or omissions, including after . . . your credit card has been charged." (SAC ¶ 38.) *Cardinal Health* does not bar that point. The court there rejected a buyer's argument that its untimely notice should be excused for "lack of prejudice," in a commercial dispute between a distributor and its component supplier, where the buyer's silence had left the seller with "no opportunity to preserve any relevant evidence or attempt any form of settlement discussions or negotiations." *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 137 (2008). Plaintiff raises no lack-of-prejudice theory, and unlike the silent buyer in *Cardinal Health*, she gave pre-suit notice and pointed to Defendant's own standing refund procedure as the avenue of cure. *Cardinal Health* did not address that circumstance, or a consumer transaction at all.

Defendant's invocation of the Terms' sixty-day pre-dispute negotiation clause changes nothing. Whether that clause binds Plaintiff depends on formation of a contract and assent to the Terms — the questions Defendant's own motion to compel arbitration puts in dispute, and questions a court does not resolve against the plaintiff on a Rule 12(b)(6) motion. And on its own terms the clause permits up to sixty days of negotiation before any claim may be filed; it is a precondition of delay, not a mechanism of prompt cure, and it cannot be reconciled with Defendant's premise that it stood ready to make Plaintiff whole within days.

With every inference drawn in Plaintiff's favor, the Court cannot hold as a matter of law that three days was unreasonable in light of Defendant's standing refund machinery; that question belongs to a later stage on a developed record. The motion to dismiss the contract and warranty claims should be denied.

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR DISMISS

## VI. PLAINTIFF ADEQUATELY ALLEGES THAT SHE LACKS AN ADEQUATE REMEDY AT LAW.

Defendant asks the Court to strike Plaintiff's equitable claims as conclusory while ignoring the detailed factual allegations that those claims now carry based on its Order. A plaintiff may plead legal and equitable relief in the alternative, and to reach the pleading stage she need only allege that she might lack an adequate remedy at law. Fed. R. Civ. P. 8(d)(2)–(3). Courts in this District "typically permit the pursuit of alternative remedies at the pleadings stage." *Steiner v. Vi-Jon Inc.*, 723 F. Supp. 3d 784, 795 (N.D. Cal. 2024). In *Cabot v. Lectric eBikes LLC*, the plaintiff alleged that she lacked an adequate remedy at all because "the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action," which this Court held to be sufficient "[a]t the pleading stage, where plaintiffs may seek relief in the alternative or different types of relief." No. 3:24-cv-06446, 2025 WL 2256328, at *2 (N.D. Cal. Aug. 7, 2025) (Lin, J.). The Second Amended Complaint pleads those same allegations, nearly word for word. (SAC ¶¶ 32, 35.)

First, restitution reaches recovery the legal claims cannot. The Second Amended Complaint alleges that equitable relief "entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize," while damages are capped at the amount wrongfully acquired plus that interest. (SAC ¶ 32.) This Court has twice held such allegations sufficient. A plaintiff "adequately alleges that her legal remedies are insufficient" where "restitution allows her to recover all profits from the wrongdoing, which may exceed the available damages at law," *Borowsky v. Tree Top, Inc.*, No. 3:25-cv-05533, 2026 WL 719695, at *2 (N.D. Cal. Mar. 16, 2026) (Lin, J.), and it is "sufficient" at "the pleading stage" to allege that "restitutionary disgorgement alone allows for the recovery of lost interest, which would be unavailable through purely legal relief," *Grimbaldeston v. Saraya USA, Inc.*, No. 3:25-cv-05649, 2025 WL 3677857, at *5 (N.D. Cal. Dec. 17, 2025) (Lin, J.) — the precise theory the Second Amended Complaint pleads (SAC ¶ 32). The allegation also cures the deficiencies identified in *Phillips*. There, the Court held that there has to be a "plausible basis to conclude that the same amount of money for the exact same harm is inadequate or incomplete." *Phillips v. Brooklyn Bedding LLC*, No. 23-cv-03781-RFL, 2024 WL 2830663, at *1 (N.D. Cal. Mar. 28, 2024) (Lin, J.). Disgorgement

of Defendant's profits is not "the same amount of money" as Plaintiff's out-of-pocket loss, it is a different and larger measure.

Second, the limitations periods diverge, and for part of the Class the legal remedy does not exist at all. The UCL carries a four-year period, one year longer than the three-year periods that govern the FAL, the CLRA, and Plaintiff's misrepresentation claims. (SAC ¶ 34.) Class members who purchased more than three years before suit have no surviving legal claim, and restitution under the UCL is their only avenue of recovery. A time-barred legal claim is not an inadequate remedy; it is no remedy at all. *Cf. Graham v. Honeywell Int'l Inc.*, No. 3:23-cv-04865, 2025 WL 2694416, at *8 (N.D. Cal. Sep. 22, 2025) (Lin, J.) ("the mere failure of claims for legal relief does not render legal relief inadequate," but where "no claim for legal relief is available," equitable relief lies).

Third, the UCL and FAL reach conduct that affords no legal remedy in the first place. The UCL "creates a cause of action for violations of laws that do not themselves provide for a private cause of action," including the Federal Trade Commission's ban on false discounts. (SAC ¶ 35); *see* 16 C.F.R. § 233.1. Damages cannot redress a violation that carries no damages remedy; restitution can. That is the broader-reach allegation this Court found sufficient in *Cabot*, and it independently sustains the restitution prayer.

Defendant's reliance on this Court's prior Order is misplaced. That Order dismissed the FAL and UCL restitution prayer because the operative opposition argued only that the governing standards "differ" and that legal remedies are "not equally prompt, certain, and . . . efficient" — the framing *Phillips* equates with the insufficient contention that a legal claim is merely "harder to prove." (Order at 6) (quoting *Phillips*). The Second Amended Complaint and this opposition rest on different grounds: disgorgement that exceeds the legal measure, a four-year period that reaches otherwise time-barred members, and statutory liability with no legal analogue. The prior Order reached none of these. *Castillo* confirms, not defeats, the point. There, the court dismissed a restitution prayer because the plaintiff alleged only that she sought restitution "if monetary damages are not available," without alleging that she "s[ought] a different amount in damages than she d[id] in restitution" or that there was "a limitation inherent to the available legal remedy itself that would make it inadequate." *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 774 (N.D. Cal. 2024) (quoting

*Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 731 (N.D. Cal. 2023)). The Second Amended Complaint alleges both: a larger measure (disgorgement of all profits) and a limitation inherent to the legal remedy (the three-year time bar). (SAC ¶¶ 32-35.)

The Court cannot now determine that legal remedies will ultimately make Plaintiff whole, and at this stage it need not. Plaintiff has added the missing factual allegations to support the inadequacy of her legal remedies on three independent grounds, which is all the pleadings require.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

Dated: June 16, 2026

Respectfully submitted,

By: */s/ Adrian Gucovschi*

Adrian Gucovschi (SBN 360988)
**GUCOVSCHI LAW FIRM, PLLC**
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

*-and-*

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

*Attorneys for Plaintiff and the Putative Class*